R-ANELL HOMES, INC. v. ALEXANDER & ALEXANDER, INC.

No. 8227SC804

(Filed 21 June 1983)

1. Insurance § 2.2— negligent advice by insurance agent—liability for damages

Plaintiff's evidence was sufficient for the jury in an action to recover damages for negligent advice given by defendant insurance agency where it tended to show that defendant's employee, knowing that plaintiff had installed its own telephone equipment, breached his duty to plaintiff by erroneously ad-

vising plaintiff that the new equipment was covered under plaintiff's existing blanket building policy and that plaintiff did not need to extend the coverage on its building contents policy; the telephone equipment was destroyed in a fire; the equipment was not covered under the building policy; and the amount of coverage on plaintiff's building contents policy was insufficient to cover the damage to the telephone equipment.

**2. Evidence § 48— failure to qualify witness as expert**

The trial court did not err in failing to qualify defendant's witness as an expert in the field of real and personal property appraisals where the witness's proposed testimony did not concern an appraisal of property but was a reiteration of what other people had told him the property was worth.

**3. Judgments § 55; Interest § 1— prejudgment interest—liability insurance— amount involved less than deductible**

The trial court did not err in denying plaintiff prejudgment interest pursuant to G.S. 24-5, although defendant had liability insurance, where defendant defended the suit on its own because the amount involved was less than the deductible amount of the liability policy.

APPEAL by defendant from *Mills, Judge.* Judgment entered 3 March 1982 in Superior Court, LINCOLN County. Heard in the Court of Appeals 6 June 1983.

Plaintiff brought this action against defendant, an insurance agency, to recover damages in the amount of $20,746.00 due to the destruction of its telephone system in a fire which occurred on September 9, 1980. Plaintiff's complaint consisted of two causes of action: that defendant was negligent in failing to procure the proper insurance coverage, and that defendant breached its contract with plaintiff by failing to procure the insurance coverage. Defendant denied the material allegations in plaintiff's complaint, and alleged that plaintiff was contributorily negligent. At trial, plaintiff presented the following evidence. Jeffrey Stewart, Secretary, Treasurer, and Director of Financing Administration for plaintiff in 1981, testified that plaintiff, a manufacturer of mobile homes, had a manufacturing plant, a warehouse, and corporate offices in Denver, North Carolina. From 1 October 1979 to 1 October 1980, plaintiff had an insurance policy through defendant. The buildings were covered by a blanket policy and the contents of the buildings were covered for actual cash value. Stewart said he dealt with Charles Harris, an employee of defendant, in obtaining the insurance. In May, 1980, plaintiff purchased a telephone system for $20,918.16. Stewart called Harris a day or two after the telephone system was installed and told him

R-Anell Homes v. Alexander & Alexander

that he needed to see about getting insurance coverage. According to Stewart, he told Harris, "We took all their [Southern Bell] telephones out and put in our own equipment." He said that the wires ran through the floors and the walls. Harris told Stewart that the telephone system had to be part of the building and was covered under the blanket policy on the building. After the fire, the insurer, Ranger Insurance Company, sent an adjuster to investigate the fire. Ranger Insurance Company told plaintiff that the telephone system would not be covered under the building policy but would be covered under the contents portion of the policy, which was limited to $60,000.00. The policy specified that losses would be paid at cash value, which is replacement cost less depreciation. According to Stewart, the cash value of all the contents, including the telephone system, destroyed by the fire was $79,000.00. The insurer paid the policy limit of $60,000.00 on the loss. The cash value of the telephone system was $20,746.51.

At the close of plaintiff's evidence, defendant moved for a directed verdict. The motion was allowed as to the contract cause of action and denied as to the negligence cause of action.

Defendant introduced the following evidence. Charles Harris, Assistant Vice-President and Office Manager for defendant, testified that his primary duty with Alexander & Alexander was to produce service insurance contracts. He said that in September 1979, the insurance coverage of the office contents of plaintiff's business was increased to $60,000.00, and the office building insurance was increased to $35,000.00. The office building insurance was later increased to $45,000.00 because of the addition made in February 1980. When asked whether he had a conversation with Stewart regarding the telephone system he said: "Not to my recollection. The only conversation that I have had concerning the telephone system was in a passing remark be it over the telephone or in his office that 'we were getting away from Ma Bell.' Beyond that, nothing else."

James Ervin Thompson, Jr., the appraiser who investigated plaintiff's fire loss, testified as to the value of the equipment damaged by the fire. He said that the cash value of the telephone system was $20,746.51.

At the close of all the evidence, defendant renewed its motion for a directed verdict. The motion was denied.

The following issues were submitted to the jury:

1. Did the plaintiff, R-Anell Homes, Inc., suffer loss as a result of the defendant, Alexander & Alexander's, Inc., negligent advice, as alleged in the complaint, that the telephone system purchased by the plaintiff was covered as a part of the buildings of the plaintiff under the blanket insurance company?

2. If so, did the plaintiff, R-Anell Homes, Inc., by its own negligence contribute to its loss?

3. What amount, if any, is the plaintiff, R-Anell Homes, Inc., entitled to recover of the defendant, Alexander & Alexander, Inc.?

The jury answered the first issue "yes", the second issue "no", and the third issue in the amount of $20,746.51. Defendant moved for judgment notwithstanding the verdict and, in the alternative, a new trial. The motion was denied.

*Kluttz, Hamlin, Reamer, Blankenship and Kluttz, by Malcolm B. Blankenship, Jr., for plaintiff appellee.*

*Shuford and Caddell, by Dwight L. Crowell III, for defendant appellant.*

VAUGHN, Chief Judge.

Defendant's first, fifth, and sixth assignments of error are that the trial court erred in denying defendant's motions for directed verdict and judgment notwithstanding the verdict on plaintiff's negligence claim. Defendant argues that its motion for directed verdict should have been granted because plaintiff did not present any evidence of negligence on the part of defendant. The question raised by defendant's motion for directed verdict was whether the evidence, viewed in the light most favorable to plaintiff, and giving plaintiff the benefit of every reasonable inference, was insufficient to justify a verdict for plaintiff. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). The test for judgment notwithstanding the verdict is the same as for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974).

[1]   Defendant first contends, although somewhat indirectly, that plaintiff has not alleged a valid cause of action. Negligent failure to procure insurance is a recognized cause of action in North Carolina. *See Sloan v. Wells*, 296 N.C. 570, 251 S.E. 2d 449 (1979); *Mayo v. American Fire and Casualty Co.*, 282 N.C. 346, 192 S.E. 2d 828 (1972); *Wiles v. Mullinax*, 270 N.C. 661, 155 S.E. 2d 246 (1967); *Johnson v. Smith*, 58 N.C. App. 390, 293 S.E. 2d 644 (1982). In this case, however, defendant had procured an insurance policy for plaintiff. Plaintiff's claim arises from defendant's alleged negligent assurance that plaintiff's telephone system was covered under the blanket building policy, and defendant's advice that plaintiff need not extend the coverage on the building contents policy. Although this is not the same as failing to procure insurance, it is similar in that plaintiff, relying on defendant, mistakenly believed that certain items were covered by insurance, and did not seek additional coverage.

An action against an insurance agent for negligent advice is recognized in North Carolina. In *Bradley Freight Lines, Inc. v. Pope, Flynn & Co.*, 42 N.C. App. 285, 256 S.E. 2d 522, *review denied*, 298 N.C. 295, 259 S.E. 2d 299 (1979), the plaintiff, a Tennessee trucking company doing business in North Carolina, was a defendant in an Iowa lawsuit brought as a result of a motor vehicle accident. Plaintiff's insurer refused to defend the suit claiming plaintiff's policy did not extend coverage to substituted vehicles that had not received a special endorsement from the insurance agency, defendant Pope, Flynn & Co. (Pope). Plaintiff then sued Pope, alleging that Pope negligently advised him that substitution of vehicles not listed on the insurance policy for vehicles covered by the policy but which were inoperative was authorized and no special endorsement was required. The truck which was involved in the accident was an unendorsed substituted vehicle. At trial, the court denied Pope's motions for directed verdict, and the jury returned a verdict for plaintiff. On appeal, Pope assigned error to the trial court's denial of its motions for directed verdict and argued that plaintiff did not have a valid cause of action because a cause of action based on negligent advice against an insurance agent had never been recognized in North Carolina. This Court held that plaintiff had alleged a valid cause of action in negligence. Plaintiff's evidence had shown a relationship between the parties, and a duty on the part of Pope

which was breached by Pope's negligent false assurances to plaintiff concerning the extent of insurance coverage on the unendorsed substituted vehicles.

In *Fli-Back Co. v. Philadelphia Manufacturers Mutual Insurance Co.,* 502 F. 2d 214 (4th Cir. 1974), the Fourth Circuit held that plaintiff had a cause of action against defendant for defendant's breach of its duty to inform plaintiff that one of its buildings was not covered under their insurance policy. In *Fli-Back,* Philadelphia Manufacturers Mutual (PMM) first provided plaintiff with fire insurance in 1955. The insurance covered all of plaintiff's manufacturing complex except the West Building which fell short of the required construction standards. PMM secured coverage from an affiliate, Affiliated FM, for the West Building. In 1960, plaintiff purchased business interruption insurance from PMM. PMM did not mention that the West Building was excluded, and did not suggest securing the insurance from Affiliated FM. The policies were renewed in 1963 and 1966. Representatives from PMM, acting for PMM and Affiliated FM, were in frequent contact with plaintiff and made recommendations about insurance coverage, safety, and fire prevention. On 7 May 1969, the West Building was destroyed by fire. Although Affiliated FM paid the claim for property damage, PMM refused plaintiff's claim for business interruption loss. Plaintiff filed suit on the policy, and later amended its complaint to state a claim for breach of agreement to provide business interruption coverage. The District Court granted defendant's motion for summary judgment. The Fourth Circuit reversed and remanded, noting that the relationship between an insurance agent and his client is both contractual and fiduciary, and, citing *Elam v. Smithdeal Realty,* 182 N.C. 600, 109 S.E. 632 (1921), proof that the agent misrepresented the scope of the insurance coverage may support an action for damages. The Court held that an agreement to provide insurance may create a continuing agency relationship under North Carolina law, and found that the evidence PMM introduced to support its motion for summary judgment raised an inference that PMM accepted a continuing obligation to advise plaintiff of its insurance needs, and if an agreement to provide full coverage can be proved, PMM breached its duty to inform plaintiff that the policies did not include the West Building.

*Bradley* and *Fli-Back* demonstrate that as well as a contractual relationship between the insurance agent and the insured, there is a fiduciary duty on the part of the insurance agent to keep the insured correctly informed as to his insurance coverage. Thus, in the instant case, plaintiff has alleged a valid cause of action for negligently conveying false advice. At trial, plaintiff introduced evidence which tended to show that Stewart told Harris, the insurance agent, that plaintiff had removed the Southern Bell telephone equipment and installed their own telephone equipment, and Harris told Stewart that no additional insurance was needed because it was covered under the blanket policy. This evidence could obviously enable a jury to find that defendant, knowing that plaintiff had installed their own telephone equipment, breached his duty to plaintiff by erroneously advising plaintiff that the equipment was covered under plaintiff's existing policy and no change in insurance coverage would be necessary. A jury could also find that plaintiff's reliance on defendant's presumably superior knowledge of the insurance business was reasonable, and plaintiff was not contributorily negligent. Clearly this is sufficient to withstand defendant's motions for directed verdict. After the jury made the above finding, the motion for judgment notwithstanding the verdict or, in the alternative, a new trial, was properly denied.

[2] Defendant's third and fourth assignments of error are that the trial court erred in failing to qualify their witness, James Thompson, as an expert witness in the field of real property and personal property appraisals. Defendant contends that had Thompson been permitted to give his opinion as an expert witness he would have testified that the actual cash value of all plaintiff's equipment was $123,960.77. This testimony, according to defendant, would have been important for two reasons: it would undermine the credibility of Stewart, who testified that the cash value of the contents destroyed by the fire was $79,000.00, and it would tend to show contributory negligence by plaintiff because plaintiff was underinsured. The competency of a witness to testify as an expert is a question addressed to the discretion of the trial judge, and his finding as to whether the witness is qualified or not is conclusive absent abuse of discretion or error of law. *State v. Moore*, 245 N.C. 158, 95 S.E. 2d 548 (1956); 1 Brandis on North Carolina Evidence Section 133 (1982). Thompson was

tendered as an expert on personal and real property appraisals. According to Webster's Seventh New Collegiate Dictionary, to appraise is "to evaluate the worth, significance or status of; . . . to give an expert judgment of the value or merit of. . . ." Thompson's proposed testimony, however, did not concern an appraisal of the property, but was merely reiterating what other people had told him the property was worth. He said he obtained his figures "from the individuals involved where the original equipment had been purchased, asking them what the equipment would cost today." Since his proposed testimony was not about an appraisal of the property, the court correctly exercised its discretion in refusing to qualify him as an expert in the field of appraisals.

Additionally, his proposed testimony could have been excluded on the ground that it was not relevant to the issue in this case. Plaintiffs brought this action to obtain payment for the damaged telephone equipment because defendants allegedly gave them negligent advice about the insurance coverage. Whether plaintiff's other property was underinsured is not at issue and, of course, is not evidence of contributory negligence as to the insurance coverage of the telephone system. Neither is it a proper matter for impeachment purposes because it is a collateral issue and Stewart may be impeached as to collateral matters only on cross-examination, not by extrinsic evidence such as Thompson's testimony. *Hawkins v. Pleasants*, 71 N.C. 325 (1874); 1 Brandis on North Carolina Evidence Section 48 (1982).

Plaintiff brings forth two cross-assignments of error. Plaintiff's first cross-assignment of error is that the trial court erred in granting defendant's motion for directed verdict as to the claim for breach of contract. As we are affirming the jury's verdict in plaintiff's favor this question need not be addressed.

[3] Plaintiff's second cross-assignment of error is that the trial court erred in denying plaintiff prejudgment interest pursuant to G.S. 24-5. G.S. 24-5 provides, in pertinent part:

> The portion of all money judgments designated by the factfinder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly. The

preceding sentence shall apply only to claims covered by liability insurance.

Plaintiff contends that since defendant had liability insurance, defendant should be required to pay prejudgment interest. Defendant, however, was defending the suit on its own because the amount involved was less than the deductible amount of the liability insurance policy. Therefore, plaintiff's claim was not covered by the liability insurance. The statute is obviously referring to claims which are defended by the liability insurer, because there is no logical reason to distinguish between claims against an uninsured defendant and an insured defendant defending a claim which falls short of the deductible amount of the insurance policy.

For the reasons stated above, the judgment is

Affirmed.

Judges HILL and BECTON concur.