EARLENE LEONARD, Plaintiff v. VAUGHN ENGLAND, Guardian for Michael Daniel, Defendant

No. 9326SC868

(Filed 7 June 1994)

**Limitations, Repose, and Laches § 119 (NCI4th)— emotional distress—battery—repressed memories—incompetent plaintiff—statute of limitations tolled**

In the 39-year-old plaintiff's action against her grandmother for battery and intentional infliction of emotional distress which allegedly occurred when plaintiff was a child, she produced sufficient evidence that her repression of memories and post-traumatic stress syndrome suffered as a result of her grandmother's alleged sexual, physical, and emotional abuse rendered plaintiff "incompetent" within the meaning of N.C.G.S. § 35A-1101(7), thereby tolling the statutes of limitations so that summary judgment for defendant was improper. N.C.G.S. § 1-17(a).

LEONARD v. ENGLAND

[115 N.C. App. 103 (1994)]

**Am Jur 2d, Limitation of Actions §§ 182 et seq.**

**Emotional or psychological "blocking" or repression as tolling running of statute of limitations. 11 ALR5th 588.**

**Post-traumatic syndrome as tolling running of statute of limitations. 12 ALR5th 546.**

Appeal by plaintiff from order entered 27 May 1993 in Mecklenburg County Superior Court by Judge Forrest A. Ferrell. Heard in the Court of Appeals 21 April 1994.

*Murphy & Chapman, P.A., by Ronald L. Chapman, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

GREENE, Judge.

Earlene Leonard (plaintiff) appeals from an order filed 27 May 1993 in Mecklenburg County Superior Court, granting summary judgment based upon the statute of limitations for Vaughn England, Guardian for Michael Daniel, in plaintiff's action for battery and intentional infliction of emotional distress.

On 15 February 1991, plaintiff filed a complaint against her grandmother, Michael Daniel (Daniel), alleging that "[w]hile the plaintiff was a child, and specifically while the plaintiff was between the approximate ages of 9 to 11, [Daniel] abused the plaintiff sexually, physically and emotionally." Plaintiff, who was 39 years of age at the time of filing suit, alleged that this abuse that occurred approximately 28 years ago constituted a battery and intentional infliction of emotional distress, entitling her to compensatory and punitive damages. On 28 May 1991, the court granted Daniel's motion to substitute Vaughn England (defendant), guardian for Daniel, as defendant due to Daniel's incompetency. Also on 28 May 1991, defendant filed an answer, denying plaintiff's allegations and moving to dismiss her complaint for insufficiency of service of process and because it is barred by the statutes of limitations for battery and intentional infliction of emotional distress.

On 25 May 1993, John Humphrey, M.D. (Dr. Humphrey), filed an affidavit which states in pertinent part:

2. . . . [on 30 March 1990], [plaintiff] related a history of having been troubled by "pictures of abuse." She thought she was

hallucinating and was "losing her mind", but was beginning to wonder if the "pictures" could possibly be of real events.

3. . . . these events were interfering with [plaintiff]'s ability to function in everyday life . . . .

4. On April 25, 1990, with [plaintiff]'s consent, I performed a sodium amytal interview. Sodium amytal is a drug (popularly referred to as "truth serum") used for therapeutic interviews and is recognized as an effective treatment for disorders involving repression.

5. Following this session, it became clear to [plaintiff] that the experiences she was reliving were in fact real, and not hallucinations.

6. [Plaintiff] had uncovered sexual abuse as a child, committed by her uncle and grandmother. These relatives had also threatened her with physical, emotional and "religious" harm if she revealed their acts. I diagnosed her as suffering from major depression and post-traumatic stress disorder.

7. It is a fairly typical defense mechanism for an abused person to repress memories of abuse so deeply that, even as an adult, suggestions of abuse would be denied by the victim. At some point, abused individuals typically begin to be troubled by flashbacks, which, as in [plaintiff]'s case, became more and more troublesome to the point that treatment was sought.

8. The fact that these flashbacks began to bring to the conscious mind the events of abuse, does not mean there was no mental illness through the interim period. Far from it. In fact, the timing of the flashbacks is entirely consistent with the diagnoses listed above and fit the pattern of post-traumatic stress syndrome. That pattern is a contributing fact in my diagnosis.

9. Based upon my examination and treatment of [plaintiff], it is my professional opinion to a reasonable degree of medical certainty that [plaintiff], until her sodium amytal session of April 25, 1990, lacked sufficient capacity to make or communicate important decisions regarding her legal rights, her person and property, including, specifically, the decision to file suit for damages for childhood abuse, because she lacked awareness or knowledge of such abuse, having repressed this knowledge to deal with the trauma caused thereby, that repression being a direct result of

> her mental condition. As a result of her mental illness and condition, [plaintiff] was incompetent to proceed until she became conscious of what happened to her and accepted the events as real rather than some hallucination on her part. Until that happened she was simply incapable of competently making important decisions about her life, all aspects of which were affected by her mental condition.

The trial court, after treating defendant's motion to dismiss as a motion for summary judgment by consent of the parties, allowed defendant's motion for summary judgment because "there is no genuine issue as to any material fact on the issue of the failure of the Plaintiff to file this action within the statute of limitations, and that the Defendant is entitled to judgment as a matter of law."

---

The issue presented is whether plaintiff has produced evidence that her repression of memories and post-traumatic stress syndrome suffered as a result of her grandmother's alleged sexual, physical, and emotional abuse rendered plaintiff "incompetent" thereby tolling the statutes of limitations so that summary judgment for defendant was improper.

Because plaintiff failed to include a certificate of service in her notice of appeal and because defendant, by her counsel's withdrawing and by her failing to file a brief in this Court, did not "waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal," *see Hale v. Afro-American Arts Int'l*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993), we treat plaintiff's appeal as a petition for writ of certiorari.

Statutes of limitations achieve several purposes, including "strik[ing] a delicate balance between the rights of the diligent plaintiff who should not be barred from pursuing a meritorious claim and the defendant who deserves protection from stale claims." *Black v. Littlejohn*, 312 N.C. 626, 635, 325 S.E.2d 469, 476 (1985). Under North Carolina law, the statute of limitations for a claim of intentional infliction of emotional distress is three years, N.C.G.S. § 1-52(5) (1993); *see King v. Cape Fear Mem. Hosp.*, 96 N.C. App. 338, 385 S.E.2d 812 (1989), *cert. denied*, 326 N.C. 265, 389 S.E.2d 114 (1990) (because not specifically denominated under any limitations statute, claim for emotional distress falls under general three-year provision of Section 1-52(5)), and the statute of limitations for battery is one year. N.C.G.S. § 1-54(3) (1993). These provisions are subject to

expansion, however, by North Carolina's "discovery" and "disabilities" statutes. The discovery statute provides that personal injury causes of action "shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant." N.C.G.S. § 1-52(16) (1993). The disabilities statute provides in pertinent part that

> (a) A person entitled to commence an action who is at the time the cause of action accrued either
>
> (1) Within the age of 18 years;
>
> (2) Insane; or
>
> (3) Incompetent as defined in G.S. 35A-1101(7) or (8) may bring his action . . . within three years next after the removal of the disability, and at no time there after.

N.C.G.S. § 1-17(a) (1993). Because plaintiff does not argue the insanity exception or the discovery statute, we address only whether plaintiff was incompetent within the meaning of Section 35A-1101(7) "at the time the cause of action accrued." *See generally* Note, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call for Legislative Action*, 26 Wake Forest L. Rev. 1245 (1991); Gary M. Ernsdorff & Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J. Crim. L. & Criminology 129 (1993) (states have either allowed or rejected tolling statutes of limitations in adult survivor's claims based on childhood sexual abuse through "insanity" exceptions or discovery statutes while some states have addressed the issue through legislation).

Plaintiff argues that Dr. Humphrey's affidavit represents a "competent and unchallenged expert opinion that [plaintiff] was until April 1990, less than one year prior to filing of this claim, an incompetent adult for purposes of the tolling of the statute of limitations," and that summary judgment for defendant was improper. We agree. Section 35A-1101(7), the relevant section in this case, provides that

> "Incompetent adult" means an adult or emancipated minor who lacks sufficient capacity to manage his own affairs or to make or communicate important decisions concerning his person, family, or property whether such lack of capacity is due to mental ill-

ness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury or similar cause or condition.

N.C.G.S. § 35A-1101(7) (1987). Dr. Humphrey states that plaintiff was, until 25 April 1990, mentally ill and suffering from post-traumatic stress syndrome, causing her to repress memories of abuse and to lack "sufficient capacity to make or communicate important decisions regarding her legal rights, her person and property, including, specifically, the decision to file suit for damages for childhood abuse." This uncontradicted evidence fully supports the classification of plaintiff as "incompetent" within the meaning of Section 35A-1101(7) at all times from the date of the alleged abuse until 25 April 1990, which necessarily includes the date of accrual of the cause of action. *See Bryant v. Thalhimer Bros., Inc.*, 113 N.C. App. 1, 13, 437 S.E.2d 519, 526 (1993) (action for emotional distress does not accrue until distress manifests itself). Therefore, because plaintiff filed her complaint within three years after 25 April 1990, the date her incompetency terminated, her claim is not barred by the statute of limitations. The order of the trial court granting summary judgment for the defendant on the basis of the statute of limitations is accordingly

Reversed.

Chief Judge ARNOLD and Judge McCRODDEN concur.