STATE FARM FIRE AND CASUALTY COMPANY, PLAINTIFF v. CHARLES DARSIE,
ADMINISTRATOR CTA OF THE ESTATE OF BERNARD ALBERT LEINFELDER,
AND MARION HARRIS LEINFELDER, DEFENDANT

No. COA03-40

(Filed 16 December 2003)

**1. Statutes of Limitation and Repose— amended counter-claim—fraud—no relation back**

Defendant insured's amended counterclaim against plaintiff insurer for fraud did not relate back for statute of limitations purposes to the date of filing of the original counterclaim because a claim for fraud must allege all material facts and circumstances constituting fraud with particularity, and the allegations in the original counterclaim go only to the face of the policies at issue and the interpretation of the terms of those policies and do not give notice of the circumstances constituting the alleged fraud. N.C.G.S. § 1A-1, Rule 15(c).

**2. Statutes of Limitation and Repose— fraud—personal liability umbrella insurance policy**

The trial court erred by entering an order estopping plaintiff insurance company from denying coverage of its personal liability umbrella policy to defendant deceased husband's estate from defendant wife's claims for injuries and damages sustained in a car accident occurring 29 October 1996 even though there was a fiduciary relationship, because: (1) reasonable diligence required defendant wife to inquire as to the scope of her coverage under the personal liability umbrella policy (PLUP) when claims were ripe and even required by the policy; (2) defendant wife did not lack capacity to challenge the policy at all times after the accident and before the three years preceding her counterclaims dated 10 May 2001; and (3) the three-year statute of limitations under N.C.G.S. § 1-52(9) began to run sometime within a year of the accident since sometime within a year after the accident, defendant was both on notice of the alleged fraud by her insurance agent and had capacity to bring an actionable fraud claim against the insurance company.

Appeal by State Farm Fire and Casualty (State Farm) from a judgment entered 22 August 2002 by Judge David Q. LaBarre in Durham County Superior Court. Heard in the Court of Appeals 15 October 2003.

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Mark E. Anderson, for plaintiff appellant.*

*Pulley, Watson, King & Lischer, P.A., by Guy W. Crabtree, for defendant appellees.*

McCULLOUGH, Judge.

This case arises from an order estopping State Farm from denying coverage of its Personal Liability Umbrella Policy (PLUP) to the Estate of Bernard Leinfelder for Mrs. Leinfelder's claims for injuries and damages sustained in a car accident occurring 29 October 1996. The following facts were found without exception by the trial court issuing the order. Beginning in 1984 and continuing at least through 1996, Mr. and Mrs. Leinfelder (the "Leinfelders" collectively) considered Mr. Larry High (Mr. High) their insurance agent. During that time, Mr. High was an agent for State Farm. The Leinfelders continuously carried their homeowner's and automobile insurance coverage with State Farm.

In 1994, the Leinfelders altered their insurance coverage. At that time, they were in their midsixties and were the sole employees of their own electronics business run out of their basement. Before the alteration to their coverage, they carried automobile insurance with State Farm which provided them with liability and UM (uninsured motorist)/UIM (underinsured motorist) coverage limits of $500,000 per person and $500,000 per accident (500/500). The limits of this policy applied to both first-party claims (claims brought by an insured or family member against another insured or family member) and third-party claims (claims brought by all others). In 1993 or early 1994, the Leinfelders were solicited by Mr. High to consult with him for an insurance "check-up." In February of 1994, Mrs. Leinfelder met with Mr. High while Mr. Leinfelder stayed at home to run their business. At that meeting Mrs. Leinfelder took notes of Mr. High's recommendations of a better coverage scheme and so reported to her husband. As a result of the meeting and Mr. High's recommendations, the Leinfelders reduced their automobile liability coverage to $100,000 per person/$300,000 per accident (100/300) and purchased a $1,000,000 PLUP.

Included in the PLUP was a first-party exclusion or "intra-family" exclusion that read:

10. For **bodily injury** or **personal injury** to the **named insured**, spouse, or anyone within the meaning of Part A. or

Part B. of the definition of **insured**. This exclusion also applies to any claim or suit made against you to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** or **personal injury**.

Thereafter, for first party claims, rather than increase the Leinfelders' liability coverage up to $1,000,000, because the underlying automobile limits were reduced from 500/500 to 100/300, the intra-family exclusion of the PLUP actually reduced the coverage limit that they had before the 1994 alteration by 80% (500 to 100).

On 29 October 1996, the Leinfelders were involved in a serious automobile accident, resulting in the death of Mr. Leinfelder. Mrs. Leinfelder sustained substantial injuries with ensuing medical expenses exceeding $500,000. The wreck was caused by the negligence of Mr. Leinfelder when he drove on the wrong side of a divided highway. On that day, both the State Farm PLUP and automobile policy were in effect.

Mrs. Leinfelder instituted a claim against her husband's estate for damages on 5 October 1999. State Farm contended the extent of her husband's automobile liability coverage was $100,000, and the $1,000,000 coverage purchased in 1994 did not cover the liability of first-party claims pursuant to the intra-family exclusion. Being the wife and one of the insured, she thus had no claim beyond $100,000 as of the 1994 alterations to their coverage.

The action now before this Court was originally instituted by State Farm on 4 February 2000 for determination of the respective parties' rights and obligations under the automobile insurance policy and PLUP sold to the Leinfelders. Mrs. Leinfelder served a counterclaim on State Farm on 8 March 2000, denying that the State Farm coverage was limited, and arguing that the intra-family exclusion clause was void as against public policy.[1] By order dated 10 May 2001, after both parties took discovery depositions, Mrs. Leinfelder was allowed to amend her counterclaim to add the claim of fraudulent misrepresentation, and relief in the form of equitable estoppel and reformation of the PLUP. On 20 November 2001, partial summary judgment was entered in favor of State Farm wherein the trial court determined the intra-family exclusion of the PLUP policy was clear and unambiguous. Summary judgment was denied as to State Farm's affirmative defense of statute of limitations, and on the issues of

---

1. Mrs. Leinfelder and State Farm stipulated Mr. Leinfelder's estate need not counterclaim as the issues could be determined without his estate's involvement.

fraud, equitable estoppel, and reformation. In a trial without a jury, the trial court held as a matter of law that the statute of limitations on a claim of fraud had not run in this case, and in light of the relationship Mr. High established with the Leinfelders, they were entitled to reformation of the PLUP.

State Farm raises two issues on appeal: first, that the trial court was incorrect in finding the statute of limitations had not run on the Leinfelders' claim of fraud; and second, that there was insufficient evidence to support the trial court's finding of fraud. Because we hold the statute of limitations had run by the time Mrs. Leinfelder made her claim for fraud, equitable estoppel, and reformation, we reverse the trial court's order reforming the PLUP policy and hold Mrs. Leinfelder is bound by the intra-family exclusion.

## Statute of Limitations for Fraud

### I. Filing Date of Amended Counterclaim and Governing Statute

[1] As a threshold matter for our statute of limitations analysis, we must first determine whether the amended counterclaim alleging fraud/misrepresentation of 10 May 2001 relates back to the initial counterclaim of 8 March 2000 brought by Mrs. Leinfelder. In granting Mrs. Leinfelder's leave to amend, the trial court did not state if the amended counterclaim related back to the date of the original claim. Rule 15(c) of the North Carolina Rules of Civil Procedure, which govern a party's ability to add a new claim after the statute of limitations has expired, provides:

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, *unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences*, to be proved pursuant to the amended pleading.

N.C. Gen. Stat. § 1A-1, Rule 15(c) (2001) (emphasis added). For an amended claim to relate back to the date of the original pleading, it will depend upon whether the original pleading gave sufficient notice of the proposed amended claim. *Pyco Supply Co. v. American Centennial Ins. Co.*, 321 N.C. 435, 440, 364 S.E.2d 380, 383 (1988).

Since Rule 15(c) is modeled after section 203(e) of the New York Civil Practice Law and Rules, New York decisions provide guidance for relation back in North Carolina. *Stevens v. Nimocks*, 82 N.C. App. 350, 354, 346 S.E.2d 180, 182, *cert. denied*, 318 N.C. 511, 349 S.E.2d

873 (1986) (negative history on issue of adding parties and relating back these claims not relevant in this instance). We find support in New York decisions for the following: when a claim requires unique factual allegations such as fraud, medical malpractice and lack of informed consent, there must be some of those unique factual allegations present in the original counterclaim. In *Jolly v. Russell*, 203 A.D.2d 527-29, 611 N.Y.S.2d 232, 233 (1994), the Supreme Court of New York, Appellate Division, held:

> Considering the nature of the cause of action, and the distinctions to be made between allegations of lack of informed consent and allegations of general negligence, we conclude that the original pleadings in this case did not provide notice of the series of transactions or occurrences to be proved in a cause of action based on lack of informed consent. Accordingly, the cause of action to recover damages for lack of informed consent did not relate back to the interposition of the original complaint, and was therefore untimely.

*Id.* (citations omitted); *see also Monaco v. New York Univ. Medical Ctr.*, 213 A.D.2d 167, 168, 623 N.Y.S.2d 566, 568, *appeal dismissed in part, denied in part*, 86 N.Y.2d 882, 659 N.E.2d 767 (1995) (the cause of action for fraud would not relate back to the time the action was commenced as the medical malpractice claim did not sufficiently state the circumstances constituting fraud to give the defendant hospital sufficient notice to save the claim). We agree with the apparent rationale of the New York appellate division that when a party seeks to relate back a claim with specialized pleading requirements, fairness to defending parties requires more particular notice in the original pleading as to the transaction or occurrence to be proven in the amended pleading. In the instant case, Mrs. Leinfelder first alleges false or negligent misrepresentation by State Farm Agent Mr. High in her amended counterclaim. A claim of fraud must allege all material facts and circumstances constituting fraud with particularity. *See* N.C. Gen. Stat. § 1A-1, Rule 9(b) (2001); *Rosenthal v. Perkins*, 42 N.C. App. 449, 257 S.E.2d 63 (1979).

The amended counterclaim alleges the fraud occurred during the procurement of Mrs. Leinfelder's insurance policy. However, in her original counterclaim she avers no elements of fraudulent conduct on the part of State Farm or its agent Mr. High (who is not mentioned once in the entire original counterclaim). The original counterclaim seeks four claims of relief: the first, that she is owed UIM coverage generally; the second, that State Farm is obligated to pay UIM cover-

STATE FARM FIRE & CAS. CO. v. DARSIE

[161 N.C. App. 542 (2003)]

age under the PLUP policy in the amount of $1,000,000 pursuant to N.C. Gen. Stat. § 20-279.21(b)(4) (2001) of the North Carolina Financial Responsibility Act; third, the PLUP policy should be interpreted in accord with Ms. Leinfelder's reasonable expectations; and fourth, the spousal exception in the PLUP policy should be declared void as against public policy. These claims go only to the face of the policies and the interpretation of its terms; they provide no allegations concerning the conduct of the contracting parties.

We conclude these claims for relief do not sufficiently give notice of the transactions, occurrences, or series of transactions or occurrences, of the alleged fraudulent conduct in the amended counterclaim. Fraud in pleading requires particularity. The purpose of Rule 9(b), and its relation to Rule 15(c) in this instance, is because fraud embraces such a wide variety of potential conduct that the alleged fraudulent party needs particularity of allegations in order to meet the evidentiary remands of the charges. *Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674 (1981). Therefore, we hold the amended date does not relate back to 8 March 2000, and is deemed filed 10 May 2001.

[2] Both Mrs. Leinfelder and State Farm recognize the applicable statute of limitations governing the claims made by Mrs. Leinfelder as N.C. Gen. Stat. § 1-52(9) (2001), which states that a claim "[f]or relief on the ground of fraud or mistake" must be filed within three years of the aggrieved party's "discovery . . . of the facts constituting the fraud or mistake." Under this provision, "discovery" means either actual discovery or when the fraud should have been discovered in the exercise of reasonable diligence. *See Grubb Properties, Inc. v. Simms Investment Co.*, 101 N.C. App. 498, 501, 400 S.E.2d 85, 88 (1991). When the statute is pled as an affirmative defense, the burden rests on the party asserting a cause of action to remove the bar. *Swartzberg v. Insurance Co.*, 252 N.C. 150, 156-57, 113 S.E.2d 270, 277 (1960); *Solon Lodge v. Ionic Lodge*, 247 N.C. 310, 316-17, 101 S.E.2d 8, 13 (1957). Specifically in this case, it is Mrs. Leinfelder's burden to show she should not be charged with discovery or imputed discovery by reasonable diligence of the exclusion within the period of three years next preceding the filing of her counterclaim to reform the policy. *See Hooker v. Worthington,* 134 N.C. 283, 46 S.E. 726 (1904); *Tuttle v. Tuttle*, 146 N.C. 484, 59 S.E. 1008 (1907). Or, alternatively, if she was on notice of the fraud, she falls within the disability statute tolling the statute of limitations until a later date. *See* N.C. Gen. Stat. § 1-17(a) (2001); N.C. Gen. Stat. § 35A-1101(7) (2001). We hold that the record supports no findings of fact or con-

clusions of law that Mrs. Leinfelder has carried her burden of either of these alternatives.

## II. *Imputed Discovery by Reasonable Diligence*

Imputing discovery of a fraud or misrepresentation for the purposes of triggering the statute of limitations on the willfully blind is long standing in North Carolina, and our Supreme Court stated clearly in *Peacock v. Barnes*, 142 N.C. 215, 218, 55 S.E. 99, 100 (1906):

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts of this character should be imputed to him for knowledge, and in the absence of any active or continued effort to conceal a fraud or mistake or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence.

Our Court has held that a court's determination of reasonable diligence under N.C. Gen. Stat. § 1-52(9) may either be a matter of fact or a matter of law depending on the circumstances of the underlying case. *Grubb Properties, Inc.*, 101 N.C. App. at 501, 400 S.E.2d at 88. Ordinarily, when fraud should be discovered in the exercise of reasonable diligence is a question of fact for the jury, particularly when the evidence is inconclusive or conflicting. *See Huss v. Huss*, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976). However, where the evidence is clear and shows without conflict that the claimant had both the capacity and opportunity to discover the fraud but failed to do so, the absence of reasonable diligence is established as a matter of law. *Moore v. Casualty Co.*, 207 N.C. 433, 437, 177 S.E. 406, 408 (1934); *see also Grubb Properties, Inc.*, 101 N.C. App. at 501, 400 S.E.2d at 88.

### A. *Standard of Review*

Whether reasonable diligence or discovery can be determined as a matter of fact or one of law determines our standard of review. As

to findings in a bench trial, we review matters of law *de novo*; we review matters of fact for any competent evidence of record to support the trial court's findings of fact and conclusions of law, whether or not contradictory evidence as to any one fact exists. *See Graham v. Martin*, 149 N.C. App. 831, 561 S.E.2d 583 (2002) (upholding the trial court's factual determination of unjust enrichment, but reversing the constructive trust remedy with *de novo* application of the Statute of Frauds).

Because we believe evidence in the record is unclear about when Mrs. Leinfelder discovered or should have discovered with reasonable diligence the alleged fraud by Mr. High, we search the record for only competent evidence to support the trial court's findings. *Id.* However, while we review these findings with great deference, there must be at least some quantum of evidence to support them. Specifically in this case, there must be evidence showing Mrs. Leinfelder has carried her burden to toll the statute of limitations by showing the fraud was first discovered sometime within the three years preceding her claim, or by lack of capacity at an otherwise reasonable time of discovery preceding those three years.

*B. Finding of Fact #43 and Conclusion of Law #27*

In its finding of fact #43, the trial court determined:

43) After Mrs. Leinfelder instituted her claim against her husband's estate for her damages, she discovered that State Farm was contending that her husband only had $100,000 of automobile liability coverage from which to recover rather than the $1,000,000 of liability coverage which she and her husband thought they had purchased in 1994 upon the recommendation of Mr. High.

This is the only finding of fact clearly suggesting when Mrs. Leinfelder first discovered the fraud. Mrs. Leinfelder's claim against her husband's estate was brought on 5 October 1999. State Farm instituted its declaratory action on 4 February 2000 which sought to deny coverage under the PLUP. Mrs. Leinfelder did not then make a claim of fraud, equitable estoppel, and reformation until 10 May 2001. In its last conclusion of law #27, the trial court found:

27) The claims of equitable estoppel and reformation raised in the Amended Counterclaim are not barred by the statute of limitations.

STATE FARM FIRE & CAS. CO. v. DARSIE

[161 N.C. App. 542 (2003)]

*1. February 1994 to October 1996*

In her brief, Mrs. Leinfelder argues that finding of fact #43 and conclusion of law #27 are supported by these findings of fact made by the trial court:

57) At the time of the meeting in February 1994, Mr. High had been the Leinfelders' insurance agent for almost 10 years.

58) The Leinfelders considered Mr. High to be their State Farm agent and contacted him with whatever questions they had regarding their insurance.

59) The Leinfelders always followed Mr. High's recommendations in regards to their insurance issues.

60) The Leinfelders had complete trust and faith in Mr. High in 1994.

61) In 1994, Mr. and Mrs. Leinfelder relied on what Mr. High told and recommended to them about their insurance coverages.

* * * *

65) A few weeks after signing the application for the personal umbrella policy, the umbrella policy and accompanying documents were mailed to, and received by, Mr. and Mrs. Leinfelder.

66) Mrs. Leinfelder received and reviewed the insurance policy and documents to make sure that it was an umbrella policy as Mr. High had told her, that it did have limits of $1,000,000.00, and that she and her husband were the insured parties under the policy. However, she did not read the policy from cover to cover.

67) Mr. and Mrs. Leinfelder relied on what Mr. High told them was contained in the policy, and since they trusted him completely, they did not feel it necessary to check behind what he had told them, to wit: that they would have better coverage with increased limits for the same claims that they would have had under their existing coverages if they made the changes that he recommended.

68) Mr. and Mrs. Leinfelder rightly expected that Mr. High would tell them if part of their coverage was actually removed or decreased because of the recommended changes.

We agree with Mrs. Leinfelder that these findings by the trial court are supported by competent evidence of record. Furthermore, we agree that our Court and our Supreme Court have extended the statutory trigger of reasonable diligent discovery of fraud in an insurance policy when the fraud was procured by a fiduciary. The essence of these holdings is that the fiduciary, acting as a trustee or confidant, supplements for a party's own reasonable diligence. *Small v. Dorsett,* 223 N.C. 754, 763, 28 S.E.2d 514, 518 (1944); *see also Phillips v. State Farm Mut. Auto. Ins. Co.,* 129 N.C. App. 111, 113, 497 S.E.2d 325, 327, *disc. review denied,* 348 N.C. 500, 510 S.E.2d 653 (1998) (stating that "An insurance agent acts as a fiduciary with respect to procuring insurance for an insured, correctly naming the insured in the policy, and correctly advising the insured about the nature and extent of his coverage"); *see also R-Anell Homes v. Alexander & Alexander,* 62 N.C. App. 653, 659, 303 S.E.2d 573, 577 (1983) (upholding a trial court's finding of fact that the plaintiff failed to reasonably discover lack of coverage based upon evidence that the insured relied upon the superior knowledge and advice of an insurance agent).

Here the trial court's findings, which we believe are based on competent evidence, along with supporting case law, excuse Mrs. Leinfelder's discovery of the terms of the PLUP policy as of the date of its issuance and receipt in 1994. Further, without any event between February 1994 and October 1996 that would cause her to question or inquire into the terms of the PLUP policy as colored by her fiduciary, during those years there was no failure on her part to review the policy and discover any fraud or misrepresentation.

Because we find the record adequate to support the trial court's finding of a fiduciary relationship, we distinguish this case from the general rights and obligations of parties to insurance transactions where no such relationship exists. These are set out clearly in *Baggett v. Summerlin Ins. & Realty Inc.,* 143 N.C. App. 43, 545 S.E.2d 462 (2001), *rev'd per curiam,* 354 N.C. 347, 554 S.E.2d 336 (2001) (where a party has an opportunity to read an insurance policy under which he claims coverage, he is held to be on notice of those terms in the policy which are otherwise clear and unambiguous. Failure to read the policy will bar his right to reformation.).

### 2. *Within a Year of 29 October 1996*

Despite the lower court's determination of a fiduciary relationship, and after close review of the record and exhibits thereto, we believe the above findings do not establish competent evidence to toll

N.C. Gen. Stat. § 1-52(9) beyond sometime within a year of 29 October 1996. As we noted above, a fiduciary relationship can at times supplement for reasonable diligence in complete understanding of one's own affairs. However, in cases such as insurance claims, when a claim becomes ripe and due under a policy requiring action on the part of the insured, at that point or a reasonable time thereafter, the policyholder is charged with more than a cursory knowledge of the extent of their coverage. In general, this Court will not wholly excuse discovering a fraud merely because a relationship of trust and confidence exists. Where something happens which reasonably excites suspicion that a fiduciary has failed to disclose all essential facts, diligent inquiry puts one on notice and triggers the time period for which a claim can be made. *Shepherd v. Shepherd,* 57 N.C. App. 680, 682-83, 292 S.E.2d 169, 170-71 (1982); *Vail v. Vail,* 233 N.C. 109, 116-17, 63 S.E.2d 202, 208 (1951).

State Farm evoked the statute of limitations defense in their response to Mrs. Leinfelder's amended counterclaim. The burden then rests upon Mrs. Leinfelder to remove the statutory bar. *See Swartzberg,* 252 N.C. 150, 113 S.E.2d 270. Therefore, when the statute of limitations' trigger is based on discovery by reasonable diligence, as in a case of fraud, there must be some competent evidence as to when discovery of the fraud was reasonable. Or alternatively, when it was otherwise reasonable to discover, there must be some competent evidence that plaintiff lacked "capacity and opportunity" at all times while discovery was reasonable and before the three years preceding the claims. *Grubb Properties,* 101 N.C. App. 498, 400 S.E.2d 85.

Based on the uncontradicted evidence in the record set out below, we hold as a matter of law that an otherwise reasonable time to discover fraud or misrepresentation in the PLUP policy was when the policy itself required certain claims, such as an accident, be brought to the attention of the insurer for the purposes of determining coverage. *Id.* at 501, 400 S.E.2d at 88 (where we held that the mistake or discrepancy in a deed that plaintiff complains of should have been discovered through the exercise of due diligence, at least by 30 May 1984, when plaintiff filed its Declaration converting the apartment complex to condominiums, and that the action filed nearly four years later was barred). We charge Mrs. Leinfelder with due diligence at least sometime within a year of the accident.

We next conclude there is no evidence of record that Mrs. Leinfelder lacked opportunity and capacity to inquire into her coverage under the policy at all times after the accident and before the

three years preceding her counterclaims dated 10 May 2001. In fact, the record shows that she did make such inquiries via her stepdaughter-in-law, Janice Nichols (Janice), to whom she gave power of attorney.

The PLUP policy Mr. and Mrs. Leinfelder contracted for has a section entitled "Your Duties To Us." The section begins:

These are the things you must do for us. We may not provide coverage if you refuse to:

1. notify us of an accident. If something happens that might involve this policy, you must let us know promptly. Send written notice to us or our agent.

Under the policy, assuming one was covered thereunder, notice was to be given to State Farm "promptly" after an accident. Mrs. Leinfelder had Janice, acting with power of attorney soon after the accident, make this prompt contact with State Farm. Mrs. Leinfelder therefore took the initial step in exercising reasonable diligence in determining the extent of her coverage, and the person acting as her attorney-in-fact was put on notice of the denial of coverage. In a 13 July 2002 deposition taken by her attorney, Mrs. Leinfelder stated:

Q I see. Now, after you were injured in this automobile wreck of October, 1996 did you make a claim for your injuries, or did Miss Nichols . . .

A Yes.

Q . . . Or your attorney, in fact, your stepdaughter-in-law made a claim for you?

A Yes, she did.

Q And after that claim was made what did you find out regarding your insurance coverage?

A She told—she told me that the insurance wouldn't cover, the insurance I had.

Q Okay, and what was your reaction to hearing that?

A Complete shock.

In a deposition taken by State Farm's attorney, on 12 June 2002, Mrs. Leinfelder testified as follows:

Q After the accident tell me what happened with regard to the State Farm coverage? Did you contact State Farm?

A Yes, indirectly.

Q Okay. Who directly contacted State Farm?

A Janice.

Q Did you ever contact State Farm?

A Yes, through Janice.

Q Through Janice, but did you personally ever talk to anyone at State Farm?

A After the accident, no.

Q Okay, because you were badly injured as I understand.

A Very badly.

Q Right. What did Janice tell you that State Farm had said?

A First thing when she dared to tell me was that State Farm was not paying anything for my injuries.

While Mrs. Leinfelder's testimony does not reveal exactly when she requested Janice to contact State Farm, other circumstantial evidence suggests that she made this request approximately three months after the accident. In a deposition taken by Mrs. Leinfelder's lawyer, Mr. High described Mrs. Leinfelder's file to include the following:

Q Drawing your attention to the next page, I see an indication there maybe a third of the way down, 1/28/97, "Jeff Campbell called. Gave him contact name and number. R.H."

A Correct.

Q What does that tell you?

A That tells—Jeff Campbell was a claims person at that time, an auto claims person. And apparently he didn't have—who is it? Janice Nichols?—did not have her phone number and wanted to know if we had any contact numbers. And they were given to him.

Further testimony by Mrs. Leinfelder on 13 July 2002 reveals Mrs. Leinfelder was on actual notice of State Farm's denial of coverage, at least within a year of the 29 October 1996 accident:

Q Okay. Now, when did you first discover that you and your husband's coverages had been decreased in regards to the injuries suffered in the automobile wreck in October of 1996?

A I don't know when Janice let me know. They were afraid because my fragile condition to—I wasn't able to even understand with all the medication I had. I, and she's coming from—I don't know, it might have been six months, it might have been a year. I really can't answer when she told me.

Mrs. Leinfelder alleges fraud in procuring the PLUP policy. We find as a matter of law that notice of denial of the PLUP coverage triggered the statute of limitations as the date when reasonable diligence would result in the fraud's discovery, and she was first injured by the denial. Mrs. Leinfelder's brief does not dispute this legal determination, but argues pursuant to the trial court's finding of fact #43 that she was not put on notice of the denial of coverage until she brought her claim against Mr. Leinfelder's estate in 1999. We see no competent evidence in the record to support this, and in fact only evidence to the contrary. There is direct deposition testimony that Mrs. Leinfelder herself had actual notice no later than a year of the accident, and that her power of attorney had notice soon after the accident. By making immediate inquiry into her coverage, through her attorney-in-fact, Mrs. Leinfelder was exercising reasonable diligence as to discovery of any fraud in the procurement of her policy. We charge her with discovery of the fraud sometime within a year of the accident, or at least by 29 October 1997. Therefore, without more, her counterclaims of May 2001 came too late.[2]

Mrs. Leinfelder cites *Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 442 S.E.2d 316 (1994), in her argument as to when the statute of limitations accrued. In *Jefferson-Pilot*, the insured was misinformed by the insurance company that his wife was the beneficiary of his life insurance policy. This Court held that "an action for negligent misrepresentation of an insurance contract does not accrue before the misrepresentation is discovered, neither does it accrue until the misrepresentation has caused the claimant harm." *Id.* at 56, 442 S.E.2d at 320 (holding that because the beneficiary of the policy only had an expected interest, rights under the policy did not vest until the death of the policyholder, and at that point triggered the statute of

---

2. We need not decide here, as we hold above that Mrs. Leinfelder had actual notice sometime before 29 October 1997 that coverage was denied, whether State Farm's denial of coverage given to Janice as attorney-in-fact immediately triggered the date for discovery by reasonable diligence.

limitations). We agree with the applicability of *Jefferson-Pilot*. However, we believe the two requirements to trigger the statute of limitations in the case of a fraudulently procured insurance contract, both its discovery and the harm caused thereby, will often occur simultaneously. Most insurance policies require immediate notice of potential claims due to events such as accidents or deaths.

When an alleged claim under a policy is ripe, notice of the denial normally will be the time when the claimant is charged with discovery by reasonable diligence of the underlying fraud, and also injured by the lack of coverage. In her brief, Mrs. Leinfelder cites *R-Anell Homes*, 62 N.C. App. 653, 303 S.E.2d 573; and *Transit, Inc. v. Casualty Co.*, 20 N.C. App. 215, 201 S.E.2d 216 (1973), *aff'd*, 285 N.C. 541, 206 S.E.2d 155 (1974), as authority to extend the statute of limitations by reasonable discovery. However, in both of these cases, the fiduciary relationship only excuses the reading of the new or renewed insurance policy during the policy's dormancy. These cases say nothing about excusing a party from the discovery of the extent of their policy after claims under the policy are ripe. Both cases were heard before a superior court within three years of the date of the incident which implicated the policy.

### III. Incompetent Adult

In North Carolina, statutes of limitation are also "subject to expansion . . . by North Carolina's . . . 'disabilities' statutes." *Leonard v. England*, 115 N.C. App. 103, 106-07, 445 S.E.2d 50, 52 (1994), *disc. review denied*, 340 N.C. 113, 455 S.E.2d 663 (1995); *see also Soderlund v. Kuch*, 143 N.C. App. 361, 369, 546 S.E.2d 632, 638 (2001). The disability statute which might operate to toll the statute of limitations at bar is N.C. Gen. Stat. § 1-17(a)(3) (2001), which states in pertinent part:

> (a) A person entitled to commence an action who is at the time the cause of action accrued under a disability . . . .
>
>      . . . .
>
> (3) The person is incompetent as defined in G.S. 35A-1101(7) or (8).

N.C. Gen. Stat. § 35A-1101(7) (2001) defines an incompetent adult as being

> an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate

important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, *injury*, or similar cause or condition.

(Emphasis added.) The appropriate test for establishing an adult incompetent "is one of mental competence to manage one's own affairs." *Cox v. Jefferson-Pilot Fire and Casualty Co.*, 80 N.C. App. 122, 125, 341 S.E.2d 608, 610 (emphasis added), *cert. denied*, 317 N.C. 702, 347 S.E.2d 38 (1986).

Mrs. Leinfelder has not argued, nor did the trial court find as fact or conclude as law, that she lacked capacity or opportunity to make the proper claims under her PLUP policy. Regardless, we here feel compelled to close this potential issue. While there is competent evidence that Mrs. Leinfelder was extremely and unfortunately injured by the accident, in and out of hospitals, and on and off of many painkillers, we find no competent evidence that her injury made her incapable of managing her own affairs. There is evidence that she named Janice as her attorney-in-fact shortly after the accident to look after her affairs, that she had Janice contact the insurance company to discern her auto and PLUP coverage soon after the accident, and that Janice informed her that coverage was being denied within a year of the accident. Yet, claims of fraud were not brought until 10 May 2001, beyond the three years from 29 October 1997, the latest date Mrs. Leinfelder could be charged with notice of the fraud.

In sum, we hold the evidence in the record, exhibits, and the lower court's findings of fact, do not establish competent evidence of the following: (1) that reasonable diligence did not require Mrs. Leinfelder to inquire as to the scope of her coverage under the PLUP policy when claims were ripe and even required by the policy (had she been covered as she thought); or, alternatively, (2) that she lacked capacity to challenge the policy at all times after the accident and before the three years preceding her counterclaims dated 10 May 2001. Furthermore, because we find evidence showing that sometime within a year after the accident of 29 October 1996, Mrs. Leinfelder was both on notice of the alleged fraud by Mr. High and had capacity to bring an actionable fraud claim against State Farm, we hold the statute began to toll sometime within a year of the accident, 29 October 1996, statutorily barring her claim of fraud first alleged in 10 May 2001. We reverse the trial court's order.

IN RE PROPOSED ASSESSMENTS v. JEFFERSON-PILOT·LIFE INS. CO.

[161 N.C. App. 558 (2003)]

Reversed.

Judges TYSON and BRYANT concur.