ROY A. COX, JR. v. JEFFERSON-PILOT FIRE AND CASUALTY COMPANY AND FIREMAN'S FUND INSURANCE COMPANY

No. 8518SC1178

(Filed 1 April 1986)

1. **Torts § 7.2— release—mental competence—test**

   The test for mental competence to enter into a release is the same as that controlling the running of the statute of limitations, i.e., whether at the time of execution of the release, the party challenging the release had the mental competence to manage his own affairs.

2. **Evidence § 52— mental competence—opinion of psychiatrist—inadmissibility**

   A psychiatrist's testimony was incompetent on the issue of plaintiff's mental capacity to execute a release in 1978 in favor of defendants where the psychiatrist's testimony was based on plaintiff's recollection of his own mental state six years earlier; plaintiff's recollection was told to the psychiatrist for the purpose of establishing plaintiff's incompetency for a civil suit; these two factors indicated the unreliability of the basis of the psychiatrist's diagnosis; plaintiff's recollection was not told to the psychiatrist for the purpose of treatment; and there was therefore nothing to rebut the indicators of unreliability.

APPEAL by plaintiff from *Collier, Judge*. Judgment entered 22 July 1985 in GUILFORD County Superior Court. Heard in the Court of Appeals 6 March 1986.

During the years 1975, 1976 and 1977, plaintiff's then wife, Vickie, embezzled approximately $152,000.00 from her employer, defendant Jefferson-Pilot. Upon discovery of these circumstances, Vickie was arrested on 10 August 1977 and charged with embezzlement. Upon Vickie's arrest, plaintiff was interrogated, subsequently arrested and jailed for approximately fourteen days. The

criminal charges against plaintiff were dismissed. Vickie pled guilty and was sentenced to prison. Subsequent to the arrest of plaintiff, defendant Jefferson-Pilot instituted a civil suit against plaintiff and Vickie and attached their property. This suit was later settled by a consent judgment, signed by both plaintiff and Vickie, conveying property of both plaintiff and Vickie to either Jefferson-Pilot or defendant Fireman's Fund, which, under a fidelity fund policy, paid Jefferson-Pilot a substantial portion of the losses incurred as a result of Vickie's activities. Plaintiff also executed a release, dated 26 September 1978, in favor of both defendants.

In his complaint, plaintiff alleged that he was arrested and incarcerated, that defendants caused his property to be attached and seized and that he signed the release to defendants, but that he was mentally incompetent at the time and did not understand what he was doing. Plaintiff alleged that "[a]s a direct and proximate result of the wrongful acts of the Defendants . . ., which acts were done maliciously and intentionally to wrongfully deprive Plaintiff of all his resources, the Plaintiff's mental condition was sorely abused and he lost all his property all to his injury and damage. . . ."

In their answers, defendants asserted as affirmative defenses that plaintiff had executed a release and that plaintiff's claims were barred by applicable statutes of limitations.

All parties engaged in discovery, including interrogatories and depositions. Defendants took the deposition of plaintiff; Harold F. Greeson, an attorney who represented plaintiff in the criminal case and civil action between defendants and plaintiff in 1977 and 1978; and Stephen P. Millikin, an attorney who represented defendants in the 1977-1978 civil action. Plaintiff took the deposition of James P. Coffey, treasurer of defendant Jefferson-Pilot, and also presented the affidavit of Dr. Bob Rollins, a psychiatrist who examined and diagnosed plaintiff in 1983.

Following discovery, both defendants moved for summary judgment. From the trial court's order granting both motions, plaintiff has appealed.

*Lunsford & Christy, by John W. Lunsford, for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Richard L. Pinto and Richard J. Votta, for defendant-appellee Jefferson-Pilot Fire and Casualty Company.*

*Hedrick, Eatman, Gardner, & Kincheloe, by Mel J. Garofalo and Mika Z. Savir, for defendant-appellee Fireman's Fund Insurance Company.*

WELLS, Judge.

In his complaint, plaintiff did not identify any specific claim for relief. In his brief, he contends that he has sufficiently alleged claims for abuse of process and intentional infliction of emotional distress. We agree that the complaint is sufficient for the abuse of process claim. However, under the test established by our Supreme Court in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979) and *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981), we hold that plaintiff has not sufficiently alleged — and that the forecast of evidence before the trial court does not tend to show — outrageous, malicious or calculated conduct on the part of either defendant intended to cause plaintiff mental anguish or emotional distress.

[1] It seems clear on the record before us that summary judgment was granted based upon defendants' affirmative defenses of the statute of limitations and the execution of a general release by plaintiff in defendants' favor. Plaintiff's complaint and the forecast of evidence make it clear that plaintiff's claim for relief for abuse of process accrued on or about 11 August 1977, at which time the applicable three-year statute of limitations, N.C. Gen. Stat. § 1-52 (1983), began to run. *See Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957). Plaintiff contends (1) that at the time his claim arose, he was mentally incompetent; that the statute of limitation was thereby tolled until his disability ended in January 1983; and that therefore his action was timely begun and (2) that he was mentally incompetent to execute the release to defendants and that therefore they are not entitled to that defense. Thus, the dispositive question in this case is that of plaintiff's mental competency or capacity on or about 11 August 1977 and on or about 26 September 1978 (the date of the release). Plaintiff does not

question the validity of the release on any grounds other than his mental capacity to enter into it. Although the disability statute which might operate to toll the statute of limitations, N.C. Gen. Stat. § 1-17(a) (1983), provides for tolling for persons who are "insane" when their "cause of action" accrues, under the decisional and statutory law of this State, we find that the appropriate test is one of mental competence to manage one's own affairs. *See Hagins v. Redevelopment Comm.*, 275 N.C. 90, 165 S.E. 2d 490 (1969) and N.C. Gen. Stat. §§ 35-1.7(11) and 35-2 (1984). Although various standards have been used or referred to by our Supreme Court in release cases ("sufficient mental competence" to enter into a release, *Walker v. Walker*, 256 N.C. 696, 124 S.E. 2d 807 (1962); "sufficient mental capacity to know the nature and effect" of entering into a release, *Mangum v. Brown*, 200 N.C. 296, 156 S.E. 535 (1931); "mental incapacity" to enter a release, *Ipock v. R.R.*, 158 N.C. 445, 74 S.E. 352 (1912) ), we perceive that the test for mental competence to enter into a release is the same as that controlling the running of the statute of limitations, *i.e.*, whether at the time of execution of the release, the party challenging the release had the mental competence to manage his own affairs.

On the issue of plaintiff's mental competence, defendants examined plaintiff at length as to the events in 1977 and 1978 which prompted plaintiff to file this action and as to plaintiff's life from 1977 to 1983. During this deposition, plaintiff was able to recall in substantial detail the events surrounding his former wife's arrest, his arrest, the attachment of his property, the resolution of the civil suit against him and the signing of the release. Plaintiff's deposition also showed that in 1977 and 1978 he was taking various medication for pain and nervous disorders (anxiety and depression) and that the events of 1977 and 1978 upset him and made him distraught, apprehensive and deeply resentful. Plaintiff's testimony does not show that he lacked the ability to understand and comprehend what was taking place. To the contrary, plaintiff's testimony shows that during the period 1977 through 1983 plaintiff lived alone, pursued gainful employment and was never hospitalized or institutionalized for treatment of mental illness.

In his deposition, Harold Greeson testified that he represented plaintiff with respect to his arrest, the attachment of plaintiff's property and the disposition of defendants' civil action against

plaintiff. Mr. Greeson testified that he had numerous meetings with plaintiff in 1977 and 1978 during which plaintiff clearly expressed his reactions to and attitudes about the events giving rise to this action. It was Greeson's opinion that plaintiff understood Greeson's advice about the events of 1977 and 1978.

[2] In summary, plaintiff's and Greeson's depositions constitute a forecast of evidence that in 1977 and 1978 and at all times between 11 August 1977 and January 1983 plaintiff was mentally competent to manage his own affairs and had the mental capacity in September 1978 to enter into the release. Plaintiff contends that the affidavit of Dr. Rollins refutes this forecast and shows that in 1977 and 1978 and until January 1983 plaintiff was lacking in mental competence to manage his own affairs and capacity to enter into the release. Dr. Rollins' affidavit reflects that he based his diagnosis of plaintiff on two interviews with plaintiff in April and May of 1983, review of plaintiff's "medical records," psychological testing, an interview with plaintiff's girlfriend and a telephone conversation with plaintiff's grandmother. Dr. Rollins gave his diagnosis and opinion as follows:

> *Mental Status:* Mr. Cox is a very tall, slim, Caucasian man, who looks his stated age 32 years. Dress is somewhat disheveled. Posture is normal and body movements are active. Eye contact and attention are good. Speech is clear. He is pleasant, cooperative, and responsive to questions. He describes a labile mood with frequent agitation. Thinking is mildly disorganized. There is no indication of suicidal intent. He describes paranoid thinking (co-workers talk about him, the insurance company may try to kill him). No hallucinations are noted. Perception, orientation, memory, and intellectual functions are intact. Concentration, judgment, and insight are impaired.

> *Analysis:* Mr. Cox was subjected to severe stress during his developmental years as a result of the death of his mother and abuse and neglect by his father. During adolescence he was withdrawn and poorly adjusted. His ill conceived first marriage failed. Mr. Cox developed symptoms of psychoses during his second marriage. These were exacerbated by his arrest and the seizure of his property. His wife's imprisonment, subsequent rejection by her, and pressure from the In-

ternal Revenue Service also contributed to his mental problems. The loss of his home was particularly traumatic in view of the previous loss of his mother and the breakup of his first marriage. Also, Mr. Cox felt quite abused by the insurance company, as he was unaware of his wife's criminal action. His adjustment has improved since the favorable Tax Court decision of December 12, 1982. He is in need of mental health treatment.

*Opinions:*

1. My diagnosis is Borderline Personality Disorder manifested by emotional instability, episodes of psychoses, labile affect, poor self image, impaired reality testing, poor control of anger, paranoid thinking, past alcohol and substance abuse, impaired interpersonal relationships, disturbed sleep, somatic symptoms, disorganized thinking, impaired concentration. (American Psychiatric Association Diagnostic and Statistical Manual, Third Edition, Diagnosis #301.83).

2. Mr. Cox's mental condition was aggravated by his arrest, confinement, and the attachment of his property.

3. Mr. Cox was not competent to sign the release to Jefferson-Pilot Fire and Casualty Company and Fireman's Fund Insurance Company in 1978.

4. For the purpose of "tolling" with regard to regaining his attached property, Mr. Cox was not competent until January 1983.

We are initially confronted with the question of whether Dr. Rollins would be competent to give testimony at trial as to plaintiff's mental competence or capacity in 1977 and 1978. The rule with respect to such testimony may be found in *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979), where the Court noted, from a thorough analysis of the major cases on the issue, that a common element in the decisions of the Court was the requirement that in order for a physician expert to be able to give an opinion based on his personal knowledge where that knowledge includes information supplied to the physician by others, including the patient, the information must be inherently reliable. *See also State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980). In *Wade*, the Court found such inherent reliability based on the fact that (1) the

defendant had been sent to the testifying doctor for treatment and (2) the doctor's examination of the defendant was thorough. In *Franks*, the Court held that such testimony was inherently reliable based only on the second criterion used in *Wade*. We find it significant, however, that in both *Wade* and *Franks*, the testifying doctors had examined the defendant patient within a few months of the crime for which the defendant was being tried, whereas, in this case, Dr. Rollins did not examine plaintiff until almost six years after plaintiff's claim for relief accrued and about five years after plaintiff signed the release. We hold that these circumstances render Dr. Rollins' testimony incompetent. We base our holding on three criteria: (1) Dr. Rollins' testimony was based on plaintiff's recollection of plaintiff's mental state six years earlier, (2) plaintiff's recollection was told to Dr. Rollins for the purpose of establishing plaintiff's incompetency for a civil suit — these two criteria indicating the unreliability of the basis of Dr. Rollins' diagnosis — and (3) plaintiff's recollection was not told to Dr. Rollins for the purpose of treatment; therefore, there was nothing to rebut the indicators of unreliability.

The forecast of evidence before the trial court showed that because of the running of the statute of limitations and because plaintiff executed a valid general release of his claim plaintiff could not maintain his action. Summary judgment was therefore properly granted. Accordingly, the judgment below is

Affirmed.

Judges WHICHARD and COZORT concur.