WILLIAM L. DAVIS, Guardian ad Litem for JOHN BROOKS DAVIS, Plaintiff
v.
DANIEL I. SUGARMAN, M.D.; THE SANGER CLINIC; LAKE NORMAN REGIONAL MEDICAL CENTER; MOORESVILLE HOSPITAL MANAGEMENT ASSOCIATES, INC.; RICHARD SCHERCZINGER; ALAN MICKLIN, M.D.; and CHARLOTTE CARDIOLOGY ASSOCIATES, P.A., Defendants
No. COA07-505
Court of Appeals of North Carolina
Filed August 19, 2008
This Case not for Publication
Anderson, Daniel, & Associates, by A.L. Butler Daniel, for plaintiff-appellant.
Parker Poe Adams & Bernstein LLP, by Harvey L. Cosper, Jr., Adam C. Shearer, and Leigh A. Kite, for defendant-appellees Daniel I. Sugarman, M.D., and The Sanger Clinic.
Helms Mulliss & Wicker, L.L.P., by Mark E. Anderson and Andrew H. Nelson, for defendant-appellees Lake Norman Regional Medical Center and Mooresville Hospital Management Associates, Inc.
Roberts and Stevens, P.A., by James W. Williams and Mark C. Kurdys, for defendant-appellees Richard Scherczinger and Charlotte Cardiology Associates, P.A.
HUNTER, Judge.
William L. Davis appeals from the trial court's granting of motions for summary judgment made by Daniel I. Sugarman, The Sanger Clinic, Lake Norman Regional Medical Center, Mooresville Hospital Management Associates, Richard Scherczinger, and Charlotte Cardiology Associates, P.A. ("defendants"). After careful review, we affirm.
On 25 August 2000, John Brooks Davis ("plaintiff") underwent an aortic valve replacement procedure at Massachusetts General Hospital. After his discharge on 30 August 2000, plaintiff returned to North Carolina to recuperate. In the early morning hours of 4 September 2000, plaintiff went to the Emergency Department of Lake Norman Regional Medical Center complaining of chest pain and pain around his incision. He was treated and discharged but returned twelve hours later complaining of increased pain, weakness, and shortness of breath. Dr. Daniel Sugarman ("defendant Sugarman") examined plaintiff upon his arrival and ordered an echocardiogram and chest x-ray. On 5 September 2000, an echocardiogram test revealed plaintiff had a pericardial effusion, which needed to be treated surgically. Later that day, plaintiff's girlfriend, Clarissa Miller, informed defendant Sugarman that she wanted to transfer plaintiff to Presbyterian Hospital in Charlotte, North Carolina, under the care of Charlotte Cardiology Associates. Defendant Sugarman spoke with plaintiff, then notified Dr. Richard Scherczinger ("defendant Scherczinger"), a physician with Charlotte Cardiology Associates, about plaintiff's transfer request. After examining plaintiff and discussing his transfer request, defendant Scherczinger accepted plaintiff as a patient. After determining that plaintiff was in stable condition, defendant Scherczinger arranged for plaintiff's transfer to Presbyterian Hospital. When plaintiff arrived at Presbyterian Hospital, he was admitted under the care of Dr. Alan Micklin, another partner at Charlotte Cardiology Associates. Dr. Micklin ordered an echo cardiogram on plaintiff, which showed a large pericardial effusion with evidence of tamponade physiology. Plaintiff was then admitted to the cath lab to undergo a pericardiocentesis procedure. While undergoing the procedure, plaintiff developed a systolic cardiac arrest. After the cardiac arrest, plaintiff remained in a coma for several days but became alert and responsive in early October. On 18 October 2000, plaintiff was discharged from Presbyterian Hospital and transferred to Cape Fear Valley Rehabilitation Center in Fayetteville, North Carolina. Ms. Miller was told by the surgeon who performed the pericardiocentesis procedure that plaintiff had gone without oxygen to his brain for between sixteen and twenty-two minutes. Since that time, plaintiff has required constant supervision.
On 12 January 2001, plaintiff executed a health care power of attorney form naming William L. Davis, plaintiff's brother, as his health care agent. This form was witnessed by Jan Spell and Gay Moser and executed before a notary public.
On 12 November 2003, the Clerk of Superior Court in Cumberland County appointed William L. Davis ("plaintiff guardian") as plaintiff's general guardian. The instant action allegingmal practice against defendants was filed on 2 September 2004, and defendants' motions for summary judgment were granted on 13 and 21 December 2006 based on the fact that the statute of limitations for filing such a claim had run.
Plaintiff guardian's sole argument on appeal is that his incompetency, which he alleges began on 5 September 2000, tolled the statute of limitations, and as such the four-year gap between the final actions of defendants and the bringing of this action is within the time frame set by statute. We disagree.
It is undisputed that the last rendering of services in this case took place on 5 September 2000, that the suit was initiated on 2 September 2004, and that the general statute of limitations on filing this type of suit is three years. See N.C. Gen. Stat. § 1-15(c) (2007) ("a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action"; statute of limitation is three years unless "damages are sought by reason of a foreign object" left in body). Plaintiff guardian argues that, due to plaintiff's disability, the exception created for persons with a disability applies: "A person entitled to commence an action who is under a disability at the time the cause of action accrued may bring his or her action within the time limited in this Subchapter, after the disability is removed[.]" N.C. Gen. Stat. § 1-17(a) (2007). One of the conditions qualifying as a disability given by the statute is incompetence as defined in N.C. Gen. Stat.§ 35A-1101(7) (2007). That statute defines "incompetent adult" as one "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property[,]" and specifically names "injury" as one of the permissible causes of that incompetence. N.C. Gen. Stat. § 35A-1101(7) (2007). Plaintiff guardian argues that the statute of limitations on his negligence claim did not begin to run until his guardian was appointed on 12 November 2003. See Fox v. Health Force, Inc., 143 N.C. App. 501, 507, 547 S.E.2d 83, 87 (2001) (this Court held that plaintiff's incompetence tolled the statute, but "[o]nce her guardian was appointed to represent her interests, the limitation period began to run from the time of the appointment"). Because the instant suit was filed within a year of that appointment, plaintiff guardian argues, it was timely filed.
However, this Court cannot ignore the intervening act of plaintiff's execution on 15 January 2001 of the health care power of attorney. That statement demonstrates plaintiff's competence at that time and, regardless of whether he was competent from 5 September 2000 to 15 January 2001, shows him to be competent as of that date. This ended the tolling of the statute of limitations, meaning any action must have been brought within three years of that date. Because this action was not brought until three years and eight months afterward, it is outside the statute of limitations. The health care power of attorney form signed by plaintiff concludes with the following paragraph: "By signing here, I indicate that I am mentally alert and competent, fully informed as to the contents of this document, and understand the full import of this grant of powers to my health care agent." The document was witnessed by Jan Spell and Gay Moser, both plaintiff's sisters, and notarized. Both women later stated in affidavits that plaintiff was not competent at the time the form was executed, and "it would have been clear to anyone that spent anytime speaking with [plaintiff] or asking him any questions, that he was completely incompetent[.]" Plaintiff guardian also points to the fact that plaintiff was admitted later that day to the hospital, where admission records indicate that he seemed to be disoriented; for example, he did not seem to know what year it was. Plaintiff guardian argues that these facts contradict the statement of competency in the health care power of attorney form he signed.
We find two objections to this argument. First, this Court has repeatedly held that "[t]he appropriate test for establishing an adult incompetent `is one of mental competence to manage one's own affairs.'" State Farm Fire & Cas. Co. v. Darsie, 161 N.C. App. 542, 557, 589 S.E.2d 391, 401 (2003) (holding injured party not incompetent where she appointed an attorney-in-fact to handle her claim), disc. review denied, 358 N.C. 241, 594 S.E.2d 194 (2004); see also Cox v. Jefferson-Pilot Fire and Casualty Co., 80 N.C. App. 122, 125, 341 S.E.2d 608, 610, cert. denied, 317 N.C. 702, 347 S.E.2d 38 (1986). Plaintiff's signing of the document giving health care power of attorney to his brother constitutes such management of his own affairs. Second, plaintiff guardian cites to no law, and this Court has found none, suggesting that he may create a genuine issue of material fact on this issue by alleging that an earlier sworn, notarized statement made by him was, in fact, false.
Plaintiff guardian finally argues that, even were he competent when he signed the health care power of attorney, he became incompetent again later that day when admitted to the hospital, and thus tolling began at that time, January 2001. This argument is without merit. Per the plain language of the statutes governing the tolling of statutes due to disability, the disability must exist at the time the action accrued in order to toll the statute of limitations. See N.C. Gen. Stat. § 1-17(a) ("under a disability at the time the cause of action accrued"); N.C. Gen. Stat. § 1-20 (2007) (titled "Disability must exist when right of action accrues"); see also Fulp v. Fulp, 264 N.C. 20, 26, 140 S.E.2d 708, 713 (1965) ("once the statute [of limitations] begins to run nothing stops it"); Nicholas v. Furniture Co., 248 N.C. 462, 471, 103 S.E.2d 837, 844 (1958) ("[i]t is well recognized law in this jurisdiction from the earliest times that when the Statute of Limitations has begun to run, no subsequent disability will stop it").
The fact that plaintiff swore to his own competency in January 2001 cannot be ignored by this Court. That act ended any tolling of the statute of limitations that might have begun in September 2000 and put the impetus on plaintiff guardian to file suit within the statutory time frame. Because he did not do so, the trial court correctly granted summary judgment to defendants.
Affirmed.
Judges McGEE and BRYANT concur.
Report per Rule 30(e).