IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-260

No. COA21-486

Filed 19 April 2022

NORTH CAROLINA INDUSTRIAL COMMISSION, I.C. No. 18-754456

LEKIA MOYE-LYONS, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION AND
SEDGWICK CMS (THIRD PARTY ADMINISTRATOR), Defendants.

Appeal by Plaintiff from opinion and award entered 20 April 2021 by North
Carolina Industrial Commission. Heard in the Court of Appeals 22 February 2022.

*Perry & Associates, by Cedric R. Perry, for Plaintiff-Appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew E.
Buckner, for Defendants-Appellees.*

WOOD, Judge.

¶ 1        Plaintiff Lekia Moye-Lyons ("Plaintiff") appeals an opinion and award of the
North Carolina Industrial Commission ("the Commission") denying Plaintiff's claim
against the North Carolina Department of Public Instruction ("Defendant-
Employer") and Sedgwick CMS ("Defendant-Carrier") (collectively, "Defendants")
based on the Commission's conclusion that Plaintiff failed to file a timely claim under
the Workers Compensation Act and that the Commission did not acquire jurisdiction
over Plaintiff's claim. After careful review, we affirm the Commission's opinion and

award.

## I.    Factual and Procedural Background

On April 20, 2007, Plaintiff was employed by Edgecombe County Public Schools, a school district falling under the authority of Defendant-Employer, as a temporary part-time math tutor for sixth, seventh, and eighth grade students. During Plaintiff's employment as a tutor, Edgecombe County Schools did not require Plaintiff to take any additional classes to become a licensed teacher. Previously, Plaintiff worked as an "emergency" teacher for Halifax County Schools and Nash-Rocky Mount Schools, as she did not possess a teaching license. However, Plaintiff greatly desired and set as a personal goal to become a licensed math teacher.

During the course of her employment with Halifax County Schools and Nash-Rocky Mount Schools, Plaintiff sought to be licensed as a lateral entry math teacher through the Nash Regional Alternative Licensing Center ("NRALC"). To obtain a teaching license through NRALC, Plaintiff had to meet a number of requirements. Although Plaintiff obtained a degree in Business Administration and Management from Shaw University, she was required to obtain her teaching license through NRALC because she did not possess a degree in Mathematics. After taking several courses, Plaintiff believed that she had completed the necessary requirements to obtain her licensure in 2004.

On November 3, 2006, Plaintiff received a letter from NRALC indicating her

application for licensure had multiple deficiencies and requiring her to complete additional steps to clear her lateral entry license. In this letter, NRALC advised Plaintiff's only choice in meeting the remaining conditions was to associate with a college or university that had an approved program in middle grades math and have that school evaluate Plaintiff's transcripts and set up a plan of study. This letter indicated that once Plaintiff completed the needed courses, the university she chose to attend would then be able to recommend Plaintiff for a clear teaching license. After receiving NRALC's November 3, 2006 letter, Plaintiff did not enroll in a college or university to finish meeting the remaining licensure requirements. As a result of receiving this letter, Plaintiff testified that she was "devastated" after not being licensed and felt "depressed" and "overwhelmed."

¶ 5 After the denial of her teaching license by NRALC, Plaintiff contends the letter caused her to have several alleged medical symptoms. Plaintiff alleged that while working for the Defendant-Employer on April 20, 2007, she suffered a stroke and subsequently developed Bell's Palsy due to stress she experienced after the denial of her teaching license. Plaintiff also alleged she began experiencing auditory disturbances "a few weeks later," that eventually lead to her diagnosis of schizophrenia in April 2009. Despite hearing beeping noises in the weeks following her alleged April 20, 2007 injuries, Plaintiff continued working for Edgecombe County Public Schools for an additional nine months to one year. During this time, Plaintiff

continued to drive herself to work and home, took care of her children, made her meals, and paid her bills.

¶ 6        Documentation of Plaintiff's medical records indicate that Plaintiff first reported signs of mental health issues in 2009. During a medical appointment on March 17, 2009, Plaintiff described hearing voices coming from the TV, ceiling, and vents for several months.  After being involuntarily committed to Coastal Plain Hospital on April 5, 2009 and readmitted on April 16, 2009, Plaintiff was diagnosed with psychosis, which involved a "fixed delusion of a plot against her by the school system and this is unfortunately likely to be a long-standing delusion which she had kept well under wraps."  On April 29, 2009, Dr. William Oliver Mann, a board-certified psychiatrist, began treating Plaintiff for schizophrenia.  Between April 4, 2009 and October 29, 2018, Plaintiff experienced issues related to her diagnosis of schizophrenia. During this period, Plaintiff professed to experiencing auditory hallucinations and delusions, and was the subject of multiple involuntary commitment proceedings instituted on April 4, 2009, October 21, 2012, and January 13, 2015.  Plaintiff was also placed into inpatient hospitalization due to her mental health on four separate occasions: from April 5-9, 2009; April 16-29, 2009; October 21-November 2, 2012; and August 26- September 14, 2016.  Plaintiff testified that between 2009 and 2017, she was hospitalized for a total of 250 days.

¶ 7        During this same period, Plaintiff applied repeatedly for Social Security

Disability benefits through the Social Security Administration (SSA). Plaintiff filed applications on May 6, 2009, July 22, 2010, September 30, 2011, and March 6, 2013. In support of Plaintiff's first application, which was denied on August 14, 2009, Plaintiff submitted a "Function Report-Adult-Third Party" which was completed by her parents on July 27, 2009. The report stated that Plaintiff was living with her parents at the time, described her as "depressed," unable "to make rational decisions to care for children, properly without help," could not hold a job, unable to manage her checkbook, needed assistance taking her medication, but noted that she was taking a twice weekly community college course, was able to pay bills, cooked "about 5% of the time," and when prompted, helped with household chores.

¶ 8    While applying for disability benefits, Plaintiff executed several medical release forms to SSA and signed on her own behalf. On June 30, 2014, Plaintiff hired an attorney to represent her in the Social Security Disability claim and executed paperwork appointing him as her representative in the matter. On May 7, 2015, Plaintiff signed an "Advance Notification of Representative Payment," as SSA had determined that Plaintiff needed assistance in managing her benefits and designated Plaintiff's father as her representative payee. By signing this document, Plaintiff indicated that she understood she had sixty days to appeal SSA's appointment of a representative payee and the identity of the representative payee. Plaintiff was initially approved for Social Security Disability benefits on April 22, 2015 for

schizophrenia, mood swings, myalgia, and neuralgia, with SSA determining that Plaintiff became disabled as of October 21, 2012. Plaintiff appealed the date of her disability to SSA's Office of Disability Adjudication and Review and was ultimately approved for full benefits on May 11, 2017, with her date of disability modified to September 1, 2010.

¶ 9        On October 29, 2018, Plaintiff initiated a claim for workers' compensation benefits by filing a Form 18 *Notice of Accident to Employer and Claim of Employee, Representative, or Dependent* for her alleged 2007 workplace injuries. At an April 25, 2019 hearing before Deputy Commissioner Kevin Howell on this claim, Plaintiff, appearing *pro se*, confirmed that she had not previously filed any workers' compensation claim for these injuries. At this hearing, a claims adjuster for Defendant-Carrier confirmed that Defendant-Carrier had not authorized any payment of indemnity or medical compensation to Plaintiff in relation to this claim.

¶ 10        On June 14, 2019, the Deputy Commissioner issued an opinion & award dismissing Plaintiff's claim with prejudice, determining that Plaintiff did not file her workers' compensation claim in a timely manner. While still proceeding *pro se*, Plaintiff appealed to the Full Commission. Prior to the matter being heard before the Full Commission, Plaintiff retained counsel and moved the Commission to amend the Record and accept new evidence. On December 19, 2019, the Full Commission issued an order directing Plaintiff to produce to Defendants, and file with the Commission,

the complete set of SSA medical documentation and other records from the 2017 hearing before the Office of Disability Adjudication and Review. Plaintiff was also ordered to subpoena any involuntary commitment records from the appropriate county clerk of court.

¶ 11        On April 20, 2021, the Full Commission issued its opinion & award, concluding that Plaintiff's claim was not timely filed, was not entitled to the tolling of the two-year limitations period pursuant to N.C. Gen. Stat. § 97-24 because Plaintiff was not mentally incompetent between April 20, 2007 to April 20, 2009, and that the Commission did not properly acquire jurisdiction over Plaintiff's claim. The Commission further concluded that even "assuming, arguendo, that Plaintiff became mentally incompetent" on April 4, 2009, the date of her first involuntary commitment, "the Full Commission concludes that she was no longer mentally incompetent by 11 November 2009, the date when her treating psychiatrist deemed her able to return to work and provide instruction to children as young as twelve years old." The Commission's conclusions were based in part upon a letter Plaintiff provided from Dr. Mann, dated November 11, 2009, which stated:

> You have requested me to determine whether or not you are capable of returning to work on a part time basis. I have been treating [you] since 4/29/2009 for schizophrenia. This condition has improved significantly, and you are stable for the last several months. You have been compliant with treatment. It is my medical opinion that you are capable of returning to part time work at this time. Although it is

> difficult to determine if and when you may become sick again, as long as you remain on medication, follow up with your treatment and see me every 6 weeks to monitor for any breakthrough symptoms, I see no reason to keep you from working at this time . . . It is my medical opinion that your condition does not prevent you from tutoring children as young as 12 years old.

The Commission further held that Plaintiff did not present sufficient competent evidence to establish that she was mentally incompetent at any point after November 11, 2009, so that any tolling of N.C. Gen. Stat. § 97-24 expired as of that date. The Commission dismissed Plaintiff's claim with prejudice. Plaintiff filed notice of appeal to this Court on May 18, 2021.

## II. Appellate Jurisdiction

The ruling of the Full Commission dismissing Plaintiff's claim with prejudice is a final decision and appeal lies to this Court pursuant to N.C. Gen. Stat. § 7A-29.

## III. Discussion

On appeal, Plaintiff contends that despite not filing a workers compensation claim within two years of April 20, 2007, the Commission erred in its finding of her claim being time barred and dismissing her claim for want of jurisdiction. Plaintiff argues her claim should not be barred because Plaintiff became mentally incompetent after the alleged April 20, 2007 incident, thus qualifying her claim to the tolling of the N.C. Gen. Stat. § 97-24's two-year limitation period. Plaintiff's arguments will each be addressed in turn.

**A. Standard of Review**

¶ 14 The primary issue presented to this Court is whether Plaintiff timely filed her claim, and thereby, invoked the jurisdiction of the Commission over her April 20, 2007 alleged injury. Our Court has established that "the timely filing of a claim for compensation is a condition precedent to the right to receive compensation and failure to file timely is a jurisdictional bar for the Industrial Commission." *Reinhardt v. Women's Pavilion, Inc.*, 102 N.C. App. 83, 86, 401 S.E.2d 138, 140 (1991). "Whether a party timely filed a claim with the Commission is a question of jurisdiction . . . ." *Cunningham v. Goodyear Tire & Rubber Co.*, 273 N.C. App. 497, 503, 849 S.E.2d 880, 885 (2020). As this Court explained in *Capps v. Southeastern Cable*, the finding of a jurisdictional fact by the Commission "is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." 214 N.C. App. 225, 226-27, 715 S.E.2d 227, 229, (2011) (citation omitted). As such, this Court is tasked to review the entire record *de novo. Morales-Rodriguez v. Carolina Quality Exteriors, Inc.*, 205 N.C. App. 712, 715, 698 S.E.2d 91, 94 (2010).

¶ 15 "This Court makes determinations concerning jurisdictional facts based on the greater weight of the evidence" by assessing the credibility of the witnesses and the weight to be given their testimony and by weighing the evidence "using the same

tests as would be employed by any fact-finder in a judicial or quasi-judicial proceeding." *Cunningham*, 273 N.C. App. at 503-04, 849 S.E.2d at 885 (first quoting *Capps*, 214 N.C. App. at 227, 715 S.E.2d at 229; and then quoting *Morales-Rodriguez*, 205 N.C. App. at 715, 698 S.E.2d at 94).

## B. The Commission's Jurisdiction over Plaintiff's claim.

Pursuant to N.C. Gen. Stat. § 97-24(a), a claim is:

> forever barred unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article within two years after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article. The provisions of this subsection shall not limit the time otherwise allowed for the filing of a claim for compensation for occupational disease in G.S. 97-58, but in no event shall the time for filing a claim for compensation for occupational disease be less than the times provided herein for filing a claim for an injury by accident.

N.C. Gen. Stat. § 97-24(a) (2021). This requirement of "filing a claim within two years of the accident is not a statute of limitation, but a condition precedent to the right to compensation." *Reinhardt*, 102 N.C. App. at 84, 401 S.E.2d at 139 (citation omitted). The Commission's dismissal of a claim "is proper where there is an absence of evidence that the Industrial Commission acquired jurisdiction by the timely filing of

a claim or by the submission of a voluntary settlement agreement to the Commission." *Id*. at 86-87, 401 S.E.2d at 140-41.

¶ 17 Plaintiff acknowledges that she did not file her worker's compensation claim with the Commission within the two years after her alleged April 20, 2007 injury, and in fact, filed her claim in 2018, more than eleven years after the injury. The Record further reflects that based on the testimony of Defendant's claims adjuster, the Defendant-Carrier never paid indemnity or medical compensation to the Plaintiff in relation to her claim. Additionally, no evidence in the Record reflects Plaintiff and Defendant-Employer ever submitting a voluntary settlement agreement in connection to Plaintiff's claim. Applying N.C. Gen. Stat. § 97-24(a) to the facts of this case, Plaintiff did not meet this condition precedent of a timely filing of her claim for the jurisdiction of the Commission to be invoked. Therefore, if Plaintiff's claim does not qualify for tolling of N.C. Gen. Stat. § 97-24's two-year limitation period, the dismissal of her claim is proper and the right to compensation is barred. *Id*.

**C. Mental Incompetency of Plaintiff Affecting Commission's Jurisdiction**

¶ 18 Despite her untimely filing to the Commission, Plaintiff contends that her claim is not time barred under N.C. Gen. Stat. § 97-24(a) because she was mentally incompetent within the meaning of N.C. Gen. Stat. § 97-50. In spite of N.C. Gen. Stat. § 97-24(a)'s two year time limitation, N.C. Gen. Stat. § 97-50 makes clear that there is no time limitation "provided in this Article for the giving of notice or making

claim under this Article [that] shall run against any person who is mentally incompetent." N.C. Gen. Stat. § 97-50 (2021); *Hand v. Fieldcrest Mills, Inc.*, 85 N.C. App. 372, 377-78, 355 S.E.2d 141, 145 (1987).

¶ 19        To qualify for the tolling protections of N.C. Gen. Stat. § 97-50, a mentally incompetent adult is one "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, intellectual disability, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." N.C. Gen. Stat. § 35A-1101(7) (2021); *In re Z.V.A.*, 373 N.C. 207, 210, 835 S.E.2d 425, 428 (2019). As such, the determination of incompetency is an adjudication process as Chapter 35A lays out that its provisions establish "the exclusive procedure for adjudicating a person to be an incompetent adult." N.C. Gen. Stat. § 35A-1102 (2021); *In re Dippel*, 249 N.C. App. 610, 612, 791 S.E.2d 684, 686 (2016).

¶ 20        Prior to the Full Commission's hearing, the Plaintiff has never undergone the mandatory procedure to be adjudged incompetent under the provisions of N.C. Gen. Stat. § 35A-1101. However, we note that the Commission possesses the authority to determine whether Plaintiff was mentally incompetent during the two-year time limitation laid out in N.C. Gen. Stat. § 97-24(a). *See Hand*, 85 N.C. App. at 378-79, 355 S.E.2d at 145.

¶ 21    In deciding whether someone is incompetent as defined by N.C. Gen. Stat. § 35A-1101, "[t]he appropriate test for establishing an adult incompetent 'is one of mental competence to *manage one's own affairs.*'" *Soderlund v. Kuch*, 143 N.C. App. 361, 373, 546 S.E.2d 632, 640 (2001) (quoting *Cox v. Jefferson-Pilot Fire and Casualty Co.*, 80 N.C. App. 122, 125, 341 S.E.2d 608, 610 (1986)). In explaining the term "affairs," our Supreme Court elaborated that it encompasses "a person's entire property and business — not just one transaction or one piece of property to which he may have a unique attachment." *Hagins v. Redevelopment Comm.*, 275 N.C. 90, 104, 165 S.E.2d 490, 499 (1969). In the adjudication of competency, "[t]he facts in every case will be different and competency or incompetency will depend upon the individual's 'general frame and habit of mind.'" *Id.* at 105, 165 S.E.2d at 500 (citation omitted). However, "mere weakness of mind will not be sufficient to put a person among those who are incompetent to manage their own affairs." *Id.* (citation omitted).

¶ 22    Here, the Full Commission concluded that Plaintiff's claim was jurisdictionally barred because Plaintiff did not file a claim within two years of April 20, 2007 and Plaintiff was not mentally incompetent during the relevant time, which would have qualified her for a tolling of N.C. Gen. Stat. § 97-24(a)'s two-year timeframe. Plaintiff challenges findings of fact 27 and 29 as well as conclusion of law 6 concluding Plaintiff was not mentally incompetent and therefore, not entitled to the tolling of N.C. Gen.

Stat. § 97-50. Plaintiff contends that because she (1) experienced symptoms and her diagnosis of schizophrenia was the subject of several involuntary commitment proceedings, and (2) was awarded full Social Security Disability benefits, the Commission erred when it concluded she had not established mental incompetency within the required time period to qualify for the tolling exemption.

### 1. *Finding of Fact 27*

Plaintiff challenges the Commission's finding of fact 27 that states:

> 27. Based upon a preponderance of the evidence, the Full Commission finds that Plaintiff has not shown sufficient evidence to establish that she was mentally incompetent during the two-year limitations period following her alleged 20 April 2007 workplace injury. Although Plaintiff was involuntarily committed on 5 April 2009 and again on 16 April 2009, the Full Commission finds that these incidents are insufficient, on their own, to show that Plaintiff was incapable of managing her own affairs between 20 April 2007 and 20 April 2009, as involuntary commitment and incompetency proceedings are statutorily distinct and involve different legal standards. The record contains no evidence that Plaintiff has ever been declared incompetent by the General Court of Justice. To the contrary, the records Plaintiff submitted to the Commission indicate that she was undergoing treatment, was taking her medication, and was generally considered to be in stable psychological condition for several years following her 2009 hospitalizations, and indeed was not hospitalized again until 21 October 2012, over three and a half years after her previous involuntary commitment. Moreover, Plaintiff remained legally capable of signing medical records releases and attorney-client agreements as late as 11 August 2014, over five years after her first involuntary commitment.

¶ 24        As we have previously noted, the Record reflects that Plaintiff has never been adjudicated as mentally incompetent or that there have been incompetency proceedings instituted against her. In preparation for her hearing before the Full Commission, Plaintiff submitted 1,289 pages of documents featuring medical records dating back to 2001. A close review of the Record indicates that in the two years spanning April 20, 2007 to April 20, 2009, Plaintiff possessed the frame of mind to manage her own affairs and to make or communicate important decisions regarding her person, family, or property. *See id.* at 105-06, 165 S.E.2d at 500. Plaintiff acknowledged that even after the alleged April 20, 2007 injury, she continued working for Defendant-Employer for the next nine months to one year. During her employment, Plaintiff drove herself to and from work, prepared meals, took care of her children, and paid her bills.

¶ 25        Continuing our review of the Record, we note the absence of any medical documentation tending to show that Plaintiff suffered from a psychiatric illness between April 20, 2007 and March 17, 2009. Instead, the Record demonstrates that Plaintiff underwent treatment for a hypertensive episode following the birth of a child on April 15, 2007 and on May 28, 2007 for tingling in the teeth and gums intermittently. Later, on June 29, 2007, the Plaintiff underwent a tubal ligation surgery. At these medical appointments and procedures, the Plaintiff reported "no previous psychiatric history" and did not endorse any psychiatric symptoms.

¶ 26        The Record also reflects Plaintiff's documented experience of having psychiatric issues on March 17, 2009, where Plaintiff reported auditory hallucinations to a physician. Plaintiff was assessed to have schizophrenia but was noted to possess an intellect within normal limits, and to not be a danger to herself or others. In April 2009, Plaintiff was hospitalized on two separate occasions at Coastal Plain Hospital, where she received a diagnosis of psychosis. The Record demonstrates that even during Plaintiff's involuntary hospitalizations, she actively participated in her treatment while hospitalized. During Plaintiff's April 16-29, 2009 hospitalization, Plaintiff expressed concerns of excessive sedation from her medications, at which point Plaintiff agreed to taking another medication to address this issue. At her April 30, 2009 discharge, Plaintiff's medical document stated, Plaintiff "was felt to be stable medically and psychiatrically at the time of discharge with the patient exhibiting no behavior consistent with wish to harm herself or others." While it is notable that Plaintiff experienced exacerbations of her psychiatric condition during these periods, Plaintiff still was able to manage her own affairs and make important decisions regarding her person and her affairs during her inpatient admissions. The Record tends to show that by November 11, 2009, Plaintiff's psychiatric state had improved considerably. As noted previously, Plaintiff's psychiatrist, Dr. Mann, found Plaintiff to be stable and capable of returning to work.

¶ 27        The Record shows that Plaintiff's mental competency continued as she actively

underwent treatment, medication management, physician follow-up and remained in stable psychological condition for several years following her 2009 hospitalizations. Between 2009 and 2010, Plaintiff's mental status exams remained consistent in reporting normal speech, unremarkable thought content, denying any hallucinations, and attending individual and group therapy. Plaintiff was not hospitalized again for her psychosis until October 21, 2012, over three and a half years after her previous involuntary commitment.

¶ 28 Additionally, Plaintiff executed medical release forms on September 21, 2010, November 27, 2011, April 1, 2013, June 30, 2014, and August 11, 2014 which permitted SSA to request medical records on her behalf. On June 30, 2014, Plaintiff also entered into an agreement with an attorney to represent her in the Social Security Disability claim. As a result, the undisputed Record evidence tends to show that Plaintiff remained legally capable of managing her own affairs when entering into these agreements.

¶ 29 Plaintiff contends that this Court should consider the incompetency proceedings she underwent between 2009 to 2015 in determining that she was mentally incompetent during the two-year period after the alleged April 20, 2007 workplace injury. We disagree. Involuntary commitment proceedings and the determination of mental incompetency are two different proceedings and require separate legal standards. Involuntary commitment proceedings determine whether

an individual is a danger to themselves or others, or requires treatment in order to prevent a further disability or deterioration that would result in dangerousness. N.C. Gen. Stat. § 122C-261(a) (2021); *In re Webber*, 201 N.C. App. 212, 217, 689 S.E.2d 468, 473 (2009); *Gregory v. Kilbride*, 150 N.C. App. 601, 612, 565 S.E.2d 685, 693 (2002).

¶ 30        In contrast, an incompetency proceeding determines whether an adult has the capacity to manage their own affairs or make or communicate important decisions regarding their person, family, or property. *See* N.C. Gen. Stat. § 35A-1101(7); *In re Dippel*, 249 N.C. App. at 612, 791 S.E.2d at 686; *Leonard v. England*, 115 N.C. App. 103, 107-08, 445 S.E.2d 50, 52 (1994). Our General Assembly defines the distinction between the two proceedings as,

> [t]he admission or commitment to a facility of an individual who allegedly has a mental illness. . . or an individual who allegedly has an intellectual or other developmental disability under the provisions of this Article shall in no way affect incompetency proceedings as set forth in Chapter 35A . . . of the General Statutes and incompetency proceedings under those Chapters shall have no effect upon admission or commitment proceedings under this Article.

N.C. Gen. Stat. § 122C-203 (2021). Therefore, we conclude that the initiation of involuntary commitment proceedings against Plaintiff in 2009, 2012, and 2015 is not determinative of her mental competence in her 2007 workers compensation claim.

### 2. *Finding of Fact 29*

¶ 31    Next, Plaintiff challenges the Full Commission's finding of fact that the SSA's decisions related to Plaintiff do not establish Plaintiff as being mentally incompetent during the period of time between the time of the alleged workplace injury and when she filed the workers compensation claim at issue here.  The Commission's finding of fact 29 states:

> Based on a preponderance of the evidence, the Full Commission finds that neither the 2017 SSA Fully Favorable Decision that Plaintiff was disabled as of 1 September 2010 nor the 2015 appointment of a representative payee for Plaintiff's SSA disability benefits establish that Plaintiff was mentally incompetent under North Carolina state law at any point during the relevant period.

Plaintiff argues that the Commission erred by not placing a greater weight on the evidence contained in SSA's documentation pertaining to its 2017 Fully Favorable Decision.  Plaintiff contends that SSA's decision was based on her "longitudinal medical history" and her records since 2008, and that these records should serve as "decisive evidence in this proceeding."  Again, we disagree.  The Industrial Commission has the duty to "consider *all* of the competent evidence, make *definitive* findings, draw its conclusions of law from these findings, and enter the appropriate award."  *Harrell v. J.P. Stevens & Co.,* 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (1980).

¶ 32    The Record tends to show that the Commission considered and weighed the

fully favorable decision of SSA awarding Plaintiff Social Security Disability benefits as well as the 1,289 pages of medical documentation from Plaintiff's packet to SSA that were submitted to the Commission. The Record indicates that the Commission addressed in its findings of fact the decision of the administrative law judge from the Social Security Administration's Office of Disability Adjudication and Review, noting that the Plaintiff successfully appealed the date of her disability so that she was granted disability benefits as of September 1, 2010. The administrative law judge found that Plaintiff had not engaged in substantial gainful activity after September 1, 2010 because of her schizophrenia and that Plaintiff possessed "the residual functional capacity to perform a full range of work," but that Plaintiff is unable to make a successful vocational transition to other jobs that she could perform.

¶ 33    Despite SSA's fully favorable decision for the Plaintiff and its appointment of a representative payee for the Plaintiff, Defendant-Employer contends that the determination of mental incompetency pursuant to N.C. Gen. Stat. § 35A-1101 considers different legal standards and principles than the ascertainment of Social Security Disability benefits pursuant to 42 U.S.C. § 416(i).

¶ 34    The Commission concluded that although Plaintiff was disabled as of September 1, 2010, SSA's determination was based upon federal statutes and regulations, rather than North Carolina state law. In reliance on 42 U.S.C. § 416(i), the Commission explained that the determination of whether an individual is

"disabled" and entitled to the benefits of Social Security rests on whether the individual is capable of gainful employment. *See* 20 C.F.R. § 404.1572 (2021).

¶ 35 In evaluating the evidence in the Record, the Commission looked to the logic of this Court's finding in *Hand* that while the ability to work may be part of the determination of mental incompetency under N.C. Gen. Stat. § 35A-1101, it is not dispositive and other factors may be considered. *See Hand*, 85 N.C. App. at 378-79, 355 S.E.2d at 145 (holding that the record contained evidence which supported the Commission's finding that Plaintiff was not incompetent and her untimely workers compensation claim was barred because, among other factors, Plaintiff continued in her job, which required physical and mental dexterity, understood her pay scale and contested the amount when she thought it was too low.).

¶ 36 Thus, we hold that the evidence of SSA's Fully Favorable Decision of Plaintiff's disability supports the Commission's finding that Plaintiff was not mentally incompetent under North Carolina law during the time in question.

¶ 37 Next, Plaintiff contends the Commission erred in not placing greater weight on SSA's assignment of a representative payee for Plaintiff on May 7, 2015, in relation to Plaintiff's claim for Social Security Disability benefits. The Record does not, however, contain any evidence tending to show that the Commission is bound by SSA's determination, nor that SSA's assignment is dispositive evidence of Plaintiff being mentally incompetent under North Carolina Law. (citing *Program Operations*

*Manual System (POMS) GN 00501.010(B)(8)*, SOC. SEC. ADMIN., https://secure.ssa.gov/apps10/poms.nsf/lnx/0200501010 (last visited Apr. 10, 2022)). The Commission found that SSA's regulations and rules articulate that a determination of incapability "is a DECISION BY SSA that a claimant is unable to manage or direct the management of benefits in his/her best interests" and that "an incapability decision is valid only for SSA matters." *Id.*

¶ 38        SSA defines a "legally competent adult" as an individual who "has not been found to be legally incompetent by a court of law" and "may include an adult who SSA has determined is incapable of managing or directing the management of funds." *Id.* Although SSA determined Plaintiff is unable to manage her benefits and requires a representative payee, under SSA's regulations and in the absence of an adjudication of incompetence, Plaintiff qualifies as a legally competent adult. *See* 42 U.S.C. § 405(j)(1)(A) (2021); N.C. Gen. Stat. § 35A-1102.

¶ 39        Based on the greater weight of the evidence, we conclude that SSA's 2017 fully favorable decision for Social Security Disability benefits and the 2015 Representative Payee Appointment does not establish that Plaintiff was mentally incompetent under North Carolina state law.

### 3. *Conclusion of Law 6*

¶ 40        Finally, Plaintiff challenges the Commission's conclusion of law that "[b]ased on the foregoing findings of fact, the Full Commission concludes that between 20 April

2007 and 20 April 2009, Plaintiff was capable of managing her own affairs and as such, was not mentally incompetent."

¶ 41        As previously discussed, the Commission's function is "to *weigh and evaluate* the *entire* evidence and determine as best it can where the truth lies." *Harrell*, 45 N.C. App. at 205, 262 S.E.2d at 835 (citation omitted).  In reaching its conclusion, the Commission relied on its findings discussed herein.  The Commission weighed and evaluated the entire Record, including the 1,289 pages of documentation featuring Plaintiff's medical records, the decisions made by SSA in awarding Plaintiff Social Security Disability benefits, and Plaintiff's involuntary commitment proceedings and hospitalizations.  For these reasons, we hold that the greater weight of the evidence demonstrates that Plaintiff was not mentally incompetent during the two-year period after her alleged work injury.

## IV.    Conclusion

¶ 42        After a careful examination of  the Record before us, we conclude because Plaintiff failed to file a timely claim and does not qualify for tolling of N.C. Gen. Stat. § 97-24's two-year limitation period, Plaintiff's claim was time-barred and the Commission did not err when it dismissed her claim for lack of subject matter jurisdiction. *Reinhardt*, 102 N.C. App. at 86-87, 401 S.E.2d at 140-41. The opinion and award of the Full Commission in this matter is affirmed.

AFFIRMED.

Chief Judge STROUD and Judge ARROWOOD concur.